Detrick Owens, V49527
California, Medical, Facility
P.O. BOX. 2000
Vacaville, California, 95696.

**FILED**

DEC 15 2017

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

In the United States District Court

for the eastern district of California, Sacramento division

| | |
|---|---|
| Detrick Owens,<br><br>        Plaintiff.<br><br>        V.<br><br>Juckie Clark, et al.,<br>        Defendants | Case No: 2:15-CV-00982-TLN-KJN<br><br>Plaintiffs Opposition to Defendants<br>Motion for Summary Judgment<br>OR, in the Alternative Summary<br>Adjudication of issues, |

To: The honorable Court All Parties And Their Attorney of record herein:

Comes Now Plaintiff Detrick Owens who hereby Opposes Defendant's Motion for Summary Judgment as violative federal rules, Plaintiff further request that the Court decline to consider or, in the alternative, deny the Moving Paper and a summary Judgment Defendant Notice is Defective. by false testimony And sworn declarations Although defendants Attorney cites United States Constitutional law or statutory authority for the

1 requested relief defendants fails to Provide True facts
2 to support upon which this court May Rule and
3 grant summary Judgment for Defendants.
4
5
6
7 Motion for Summary Judgment, Plaintiff hereby Move
8 For summary Judgment to be decline for defendants
9
10 on the grounds that there is true genuine dispute and
11
12 Material Facts that defendants Violated Plaintiff's Eighth
13
14 Amendment rights to be free from Cruel and Unusual
15 Punishment, Deliberate indifference to Plaintiffs Serious
16
17 Medical needs, "This Motion is based on this Notice, the
18
19         Complaint and Answer the Attached Memorandum of
20
21 Points and authorities, Exhibits And Any and all Other relevant
22 evidence, declarations and Court file herein,
23
24 Please take further Notice a failure to file a reply brief to this Motion
25 maybe Considered to be a waiver of the summary Judgment to be
26 denied against defendants this Motion are More fully Set forth in the
27 Court's order filed and in the Notice to this Motion,
28 Dated: December 11, 2011:

Respectfully Submitted
Derrick Owens
Pro Se Plaintiff

: Plaintiffs Memorandum of Points And
Authorities Preamble Statement of Case And
Introduction :

Plaintiff Contends that on April 24, 2014, he was tapered
off his Morphine tablets due to an Alleged Violation of the
Pain Contract, the Morphine Medication Completely stoped
and was discontinued on May 14, 2014, And Plaintiff was in Chronic
and substantial Pains, Plaintiff submitted his Medical request
for Care and Alternative Pain Medication on June 2, 2014, Plaintiff
was again Seen By the defendant Francis Ko, on June 16, 2014
in response to the <u>Medical request 1362 submitted on June 2, 2014</u>
(see Exhibit. 1.) however, Plaintiff was refused treatment by the above defendant
and Plaintiff suffered Serious Pain by the refusal to provide Alternative
Pain Medications, on June 16, 2014 and July 22, 2014.
on April 24, 2014, Plaintiffs Urine Showed [Morphine] and [Methamphetamine],
Plaintiff was Made to provide his Urine Sample to detect if he was taking
his Morphine tablets because a Nurse thought she Noticed Plaintiff or Suspected
Plaintiff May Not have Swallowed and was Cheeking his Morphine tablets, however
on April 24, 2014, during an appointment with Francis Ko, Plaintiff
was told his Urine sample Showed that he was taking his Morphine
tablets but that Methamphetamines —

had also been found in his system. the defendant francis Ko. ordered that Plaintiffs Morphine be discontinued, and on April 24, 2014. the order was Placed to reduce Plaintiffs daily does by 25% each week Until completely off on May 14, 2014. when Plaintiffs Morphine Tablets were Completely discontinued, the defendant francis Ko, Never Called the Plaintiff in to get a baseline Pain level,

On June 2, 2014. Plaintiff Submitted a 7362 health Care request for Medical Care, Plaintiff wrote on the 7362 health Care request, "that he needed to Speak with his Provider Concerning his Medication", and Number ten is Marked Over on the Pain Scale on the 7362 health Care Form which indicates Chronic Pain to the doctor defendant Francis Ko. (see Exhibit one).

during the June 16, 2014. Appointment with the defendant Francis Ko. the Plaintiff Complained of Suffering Chronic and substantial Pain and asked to be Provided a Alternative Pain Medication, however. the defendant francis Ko. refused Plaintiff any Medical treatment and rushed Plaintiff out of his office.

On June 19, 2014, Plaintiff Submitted his health Care
Appeal form directly to the health Care appeals
Coordination defendant wendy harris requesting emergency
Processing due to being in Chronic and Substantial Pain
and for being denied and refused Medical Treatment by
the defendant francis Xo. on June 16, 2014, however, the
Plaintiffs health Care appeal was Processed as a routine appeal,
' the delay in recieving Medical Care Caused
the Plaintiff to Suffer the unnecessary and wanton infliction
of Pain. because the Plaintiff was denied treatment on June
16, 2014, after Submitting his Medical health Care [1362]
requesting help. the defendant wendy harris delayed Plaintiff
with recieving emergency Medical Care when she Processed the
health Care appeal as a routine, by Policy the determination
of Processing emergency Medical Appeals is Made by the
appeals Coordinator. this indifference violates the Eighth
Amendment of the United States Constitution, delay of Medical
Treatment,

1  On July 22:2014, The Plaintiff was again seen by
2  the defendant Francis Ko. and requested Alternative
3  Pain Medication For Chronice neck Back and Sciatica
4  nerve Pain But was again denied Medical Treatment,
5  by the defendant Francis Ko.
6
7  On July 24.2014, Francis Ko. Finally decided to Prescibe
8  the Alternative Pain Medication because the Plaintiff had Filed
9  his Medical health Care 602 Appeal on June 19.2014. however,
10
11 the Plaintiff was denied Medical treatment on all Previous
12
13 dates April 24.2014, "June 16, 2014" and "July 22, 2014",
14
15 the denial of Medical treatment and the defendant Francis
16
17 Ko. refusal to Provide Alternative Pain Medication Caused
18
19 the Plaintiff to suffer harm in this Case. likewise,
20
21 the delay in receiving Medical treatment which Causes
22
23 harm violates the Eighth Amendment.

24 The defendant Teresa Link Violated The Policy and Procecades
25 for collecting a urine sample from a Male inmate,
26 and violated the Fourth Amendment of the United States
27 Constitution, when she forced the Plaintiff to Pull out his Penis
28 during the Urine Sample Collection and she didn't Provide hand gloves

which are required when ever Collecting a Urine Sample from a inmate, Plaintiff was Placed in a dirty restroom to Provide his Urine and the area was Not sanitary and clean which is also required by the department Policy.

The defendant Teresa Link became Ogle as the Procedure for Plaintiff Providing his Urine Sample went on, The Policy Clearly states that staff shall be the Same gender as the inmate being tested, Likewise, The Policy and Fourth Amendment was Violated in this Case, if the Policy was for Custody staff only it would Say So. however, it does Not.

Plaintiff filed his Administrative Appeal regarding this issue appealed to the defendant Jackie Clark and Michele Ditomas requesting reinstatment of his Original Medication for Pain the Morphine tablets due to the Many Violations Made by the defendant Teresa Link during the Collection of Plaintiffs Urine Sample and Plaintiff Appeal was denied at every level which exhausted all administrative remedies,

Plaintiff was Physically harmed by the defendants Francis Ko. denial of medical treatment and Alternative Medication

Finally.   Plaintiff Contends that the defendant
Francis Ko, Knew of the Medical health Care Appeal
Plaintiff  _Filed_  on June 19, 2014, when Plaintiff was Seen
by the defendant Francis Ko, on July 22. 2014. Yet
After requesting the Alternative Medication, None was
Provided to the Plaintiff for his Chronic Pain Conditions

Plaintiff Also Contends that After he Put
the June 2. 2014. 1362 health Care request for help.
the Number Ten is Checked off on the form which indicates
Chronic and substantial Pain to the doctor, but again
after Plaintiff requested treatment when Seen on June 16.2014
None was Provided and Plaintiff was left Suffering in Pain
and denied treatment by the defendant Francis Ko, which
Caused Serious harm to the Plaintiff, (see "1362, Exhibit. one.")
Showing And Proving Plaintiff requested Medication on
June 2, 2014, And was Seen on June 16, 2014

: Opposing Summary Judgment Standard :

Summary Judgment is Appropriate when it is demonstrated that there exists No genuine issue as to any Material Fact and the Moving Party is Entitled to Judgment as a Matter of Law. Fed. R. Civ. P. Rule 56 (c) Adickes V. H. Kresse Co. 398 U.S. 144, 157. 90 S. CT. 1598 26 L. Ed. 2d 142 (1970). here there's several genuine issues Plaintiff Claims,

A Material Fact is one that Might affect the Outcome of the suit under the Substantive Law, Anderson v. Liberty Lobby Inc. 477 u.S. 242, 248. 106 Sct. 2505, 91 L. Ed. 2d, 202 (1986) A genuine dispute is one which a reasonable Jury Could return a Verdict for the Non-Moving Party Anderson 477 U.S. at 248. T. W. Elec. Serv. V. Pacific elec. 809 f.2d 626 (9th Cir. 1987)

the Moving Party Must State the basis for it's Motion and identify the Portions of "the Pleadings, depositions, Answers to interrogatories and admissions on file, Togethers with Affidavits if Any", it believes demonstrates the Absence of a Material Fact Celotex Corp v. Catrett 477 u.s. 317, 323, 106 S. Ct. 2548, 91 L. Ed

9 of 32

2d, 265 (1986) A Defendant Party May "Move with or without Supporting Affidavits For Summary Judgment in the Party's Favor" on any or all Claims, Fed. R. Civ. P. (d)

The burden then Shifts to the Non-Moving Party who "May Not rest upon the Mere Allegations or denials of the adverse Party's Pleadings" Fed. R. Civ. P. (E) Matsuskita Elec. Indus. Co. v. Zenith Radio Corp. 475 U.S. 574 586, 106 S. Ct. 1348, 89 L. Ed 2d 538 (1986) The Non-Moving Party Must "go beyond the Pleadings and by [it's] own Affidavits or by the depositions, Answers to interrogatories and Admissions on File" designate specific Facts Showing that there is a genuine 'issus For Trial" Celotex, 477 U.S. 324 (quoting Fed. R. Civ. P. 56(E), and that Party's evidence is to be believed' Anderson 477 U.S. At 255 all reasonable inferences Must be drawn in favor of the Non-Moving Party, Matsushita 475 u.s. at 587, the Court Must Not weight the evidence, draw Legitimate inferences or Make Credibility determinations in evaluating a Motion For Summary Judgment, Anderson, 477 u.s, At 255

A Party seeking Summary Judgment always bears the initial burden of establishing the absence of a Genuine issue of material fact Celotex 477 U.S. at 323, 106 S.Ct. at 2553 The moving Party Can Satisfy this burden in two ways : (1) by Presenting evidence that Party's Case or (2) by demonstrating that the Non-moving Party failed to make a showing Sufficient to establish an element essential to that Party's Case on which that Party will bear the burden of Proof at trial Id at 322 23, 106 S.Ct. at 2552-53, However, where the moving Party bears the burden of Proof on an issue, it Cannot obtain Summary Judgment unless it Presents evidence So Compelling that No rational Jury would Fail to award Judgment for the moving Party, See E.G. Torress Vargas V. Santiago Cummings 149 F.3d. 29. 35 (1st cir. 1998) ("Party who has the burden of Proof on a dispositive issue Cannot Attain Summary Judgment unless the evidence that he Provides on that issues is Conclusives") Fantenat V. upJohn Co. 780 F.2d 1190, 1194 (5th cir. 1986) ("the moving Party bears the burden of Proof on an issue, either because he is the Plaintiff or as a defendant he is asserting an affirmative defense, he must

Establish beyond Peradventure all of the essential elements of the Claims or defense to warrant Judgment in his Favor") if the Moving Party Fails to discharge this initial burden, Summary Judgment Must be denied and the Court Need not Consider the Non-Moving Party's evidence Adickes v. H. Kresse Co. 398 U.S. 144, 159-60, 90 S.ct. 1598, 1609-10.

## : Argument :

Defendants Francis Ko, Wendy Harris, Teresa Zink, Jackie Clark, and Michele Dilomas failed to Carry their burden for Summary Judgment on Plaintiffs Eighth Amendment Deliberate indifference denial of Medical Care and Alternative Pain Medication Claim when Plaintiff Was denied this Care on April 24, 2014", June 16, 2014", July 22, 2014", by the [Defendant Francis Ko,] .

Construing Plaintiff Pro Se Pleadings Liberally as the Court Must To And Plaintiff Allege Facts are true, Plaintiff Should be entitled Opposition of relief, Thompson v. Davis 295 F. 3d 890, 895 (9th Cir. 2002), Cert. denied, 538 U.S. 921, 155 L. Ed. 2d 311, 123 S. Ct. 1570 (2003), See Franklin v. Murphy 745 F. 2d, 1221, 1235 (9th Cir 1984)

(holding that a Pro-se Prisoner litigants Pleadings must be Construed liberally on a motion for Opposition),

For Purposes of Summary Judgment, The Court must Accept as true the Non-moving Party's Supported Allegations, See Caillette V. Delnore 886 F.2d 1194, 1198 (9th Cir. 1989) Teamsters Union V. Goibeat western Chemical Co. 181 F.2d 164, 166 (9th Cir. 1986),

At the Summary Judgment Stage, however, The district Court may not make Credibility determinations or weigh conflicting evidence, Musick V. Burke, 913 F.2d 1390, 1394 (9th Cir. 1990) Although Summary Judgment is a useful device it must be used Cautiously or it May lead to drastic and lethal result, Hanson V. Polk County lands, Inc, 608 F.2d 129, 130 (5th Cir. 1979) Summary Judgment is a Valuble Judicial Tool, because its Consequences are so severe, however, the district Court must alwasy guard against Premature Truncation of ligitimate lawsuits merely because of Unskilled Presentations, see Murrell V. Bennett 615 F.2d 306, 309 (5th Cir. 1980),

Indeed the Court must be especially Jesitant before employing Summary Judgment against an incarcerated Party, who is limited in his ability to Collect evidence Supporting

His claim, one court has even questioned whether the summary Judgment Procedure should ever be employed against an incarcerated Party Particularly against one held in solitary Confinement in view of the Language of Fed. R. Civ. P. 56 (F) Rule 56 (F) states " Should it Appear from the Affidavit of a Party Opposing the Motion that he cannot for reasons stated Present by Affidavit Facts Essential to Justify his Opposition, The Court May refuse the Application for Judgment .. The Notes of the Advisory Committee on the 1963 Amendment states:

[S]ummary Judgment May be inappropriate where the Party Opposing it shows under Subdivision (F) that he Cannot at the there Present Facts Essentially to Justify his Opposition it Can be Argued that a Segregated Prisoner by Virtue of his statues show that he Cannot Present Fact essential to Justify all his opposition, Fed. R. Civ. P. 56 (F)

.: The defendant Francis Ko. violated the United States Constitutions Eighth Amendment. refusing to Provide Alternate Pain Medication to Plaintiff on June 16, 2014, July 22, 2014

The Eighth Amendment Prescibes the infliction of Cruel and Unusual Punishment on Prisoners whether a Particular event or Condition in Fact Constitute "Cruel and Unusual Punishment" is gaurded against" the evolving Standard of decency that Mark

the Progress of Maturing Society, Hudson v. McMilliam, 508
U.S 216-18, 112 S. Ct 995, 117 L. Ed 2d 156 (1992)(quoting
Rhodes v. Chapman 452 U.S. 337, 346 101 S. Ct. 2392. 69
L. Ed 2d. (1981) but see Also, Farmer v. Brennan. 511 U.S.
825, 837. 114 S. Ct. 1970, 128 L. Ed 2d 811 (1994) For A
Medical Need is serious if failure to Treat it will result
in significant injury or the Unnecessary and Wanton infliction
of Pain, Peralta, 744 F.3d at 1081 (citing Jett v. Penner, 439
F.3d at 1096 (9th Cir. 2006)

The Ninth Circuit Court of Appeals recently

held in Jett v. Penner, 439 F. 3d at 1093 (9th Cir
2006) Jett Provided Sufficient evidence including Medical
Slips, a letter, and a grievance to demonstrate the
existence of a genuine issue of Material Fact, Jett
was entitled to a inference that doctors received the Letters Jett
wrote and sent via institutional Mail advising of his Medical
Condition and Need to See an orthopedist.
in the Ninth Circuit deliberate indifference Consist of two Parts. (1) the Plaintiff
Must Show a "Serious Medical Need" by demonstrating the failure to Treat
a Prisoners Condition Could result in further infliction of Pain,

*Id* at 1099 (citing *Estelle v. Gamble*, 429 U.S. at 104, 97 S.Ct. 285). second, The Plaintiff, Must Show The defendant's response to the Need was deliberately indifferent *Id* at 1060, This Second Prong – defendants response to the need was deliberately indifferent - is Satisfied by Showing (a) "a Purposeful act" or Failure To respond To a Prisoners Pain or Possible Medical Need and (B) Harm Caused by the indifference. The court stated, There was evidence in *Jetts* Medical File, he Filed Medical "slips", he Filed a Medical grievance describing his Need For Medical Care, *Jett* 439 F.3d at 1096-97 (9th Cir. 2006)

" Statement of facts ":
" ; Plaintiffs Statement of Undisputed Fact ":

Here, Plaintiff Contends that the defendant Francis Ko. Violated Plaintiffs Eighth Amendment rights when he denied Plaintiff Medical Treatment on Several Occasions And Forcing Plaintiff to suffer the Unnecessary Wanton infliction of Pain, Compare *Jett v. Penner*, 439 F.3d 1093 (9th Cir. 2006) with *farmer* 511 U.S. 825.

On April 24, 2014, the defendant Francis Ko, wrote the order to discontinue Plaintiffs Morphine Tablets which Plaintiff was Taking for Chronic Pain, Plaintiffs Morphine Tablets was tapered off completely in Three weeks and on May 14, 2014, stop receiving Pain Medication for his Chronic Pain, however, Plaintiff requested Alternative Medication for his Pain Condition on April 24, 2014, but the request was refused by the defendant Francis Ko, Plaintiff Submitted his health Care request "1362" for Medication on "June 2, 2014" and was again seen on "June 16, 2014" by the defendant Francis Ko, Plaintiff at the "June 16, 2014" Appointment with the defendant Francis Ko, "Complained of Suffering Chronic Neck and back Pain and Chronic Sciatic Nerv Pain" and again requested Alternative Pain Medication but was denied and again refused Treatment by the defendant Francis Ko, Just like on April 24, 2014, Plaintiff than Submitted his Appeal 602 To the Facility health Care Appeals Coordinator due to being in Chronic Pain and being denied basic Medical Care by the defendant Francis Ko,

on June 19.2014, The Plaintiffs health care Appeal
was submitted requested 'emergency Processing due to being
in chronic Pain and for being denied Medical Treatment and
Alternative Pain Medication, however, The health care appeal was
assigned " to the defendant Francis Ko, on June 21.2014. however,

Plaintiff was again been by the
defendant francis Ko, on "July 22".2014". There,
Plaintiff again requested Medical treatment and Alternative Medication
but Plaintiff was again denied Treatment Just like on the Previous
dates April 24.2014 and "June 16.2016,"

Plaintiff wasn't granted Alternative Pain
Medications until ~~July~~. "July 24, 2014". Plaintiff was denied
Medical Treatment on Three Occasions "April 24.2014.""June 16.2014,"
and "July 22. 2014". after Complaining of Chronic Neck and back
Pains, Plaintiff also has a "known Sciatic Nerv "inJury" from
a gun shot wound that is Very Painful and was denied
Treatment by the defendant francis Ko, on all the above dates,
the appeals Coordinator defendant Wendy Harris failure To

18 of 32

1 Process Plaintiffs health Care Appeal as an emergency
2 "delayed" Plaintiffs with receiving Medical care and as a
3
4 result Plaintiff suffered Unnecessary wanton infliction of Pain,
5
6 for delay in receiving Medical Treatment that is harmful
7
8 Violates the Eighth Amendment,
9
10            Again, Plaintiff was denied Medical Treatment
11 by the defendant francis Ko, in this Case at three appointments,
12
13 "Plaintiff told" the defendant francis Ko, that he was suffering
14 in Chronic and Substantial Pain but was denied all Medical
15
16 Treatment on April 24.2014, "June 16,2014", and "July 22,2014".
17
18         III Dispute Material facts Exist as to the Parties III
19            Different version of events regarding the April 24,2014,
20         " June 16, 2014," and "July 22,2014" Medical Appointments,
21         deliberate indifference denial of Medical Care Eighth Amendment
22         Violation which Preclude Defendant Francis Ko, request
23            for Summary Judgment
24
25                     "                              "
26 The defendant francis Ko. Claim Plaintiff did Not request
27 any Alternative Pain Medications," Plaintiff Denies That Claim"
28 for The Plaintiff Submits That he requested Alternative Medication

at all the Appointments "April 24, 2014", June 16, 2014",
"July 22, 2014" and "July 24, 2014", furthermore the
1362 Health Care request form "states" Plaintiff "needs
to see the Provider for medication, Additionally. number
Ten is mark off on the [Pain Scale] on the "1362"
health care form which also indicated to the defendant
that the plaintiff was "Suffering in Chronic Pain",
(see, Exhibit, one,) ←

As Plaintiff Clearly Pointed out Above, defendant
Francis Ko, version of Events regarding the ~~xxxxxxxxxxxxx~~
"June 16, 2014" and "July 22, 2014", deliberate indifference at
the medical Appointments Totally differs from that of Plaintiffs
version of "Facts" as to how Plaintiff was denied
his Eighth Amendment to Medical Care, (Plt's opp &
Mot. forms)  In, T  Elect. Serv. Inc. V. Pacific Elec
Contractors Ass'n 809 F.2d 629 (9th Cir. 1987) where
the Court explained that "At Summary Judgment,, The Judge
must view the evidence in light most favorable to the
Non-Moving Party: if direct Evidence Produced by the
Moving Party Conflict with direct Evidence Produced

20 of 32

By the Non-Moving Party, The Judge Assume
The Truth of the evidence set forth by the Non-Moving
Party with respect to the Fact "Id at 630-31,
(citations Omitted) Anderson 477 u.s. at 255, 106 s.CT
2505 [The Evidence of the Non-Movant is To be
believed"]

Here, however, the defendants [Francis &o.] only ask
The Court to Accept his evidence and version of
Facts as Truth but to Totally disregard Plaintiffs
In, Johnson v. Perry 106 Fed. APPX, 467 (6th Cir. 2004)
reversing Summary Judgment because the district
court Presumptively Credited The guards Version Over
Johnson, in, Jett v. Penner, 439 F.3d 1093 (9th Circuit, 2006)
The Ninth Circuit Court of Appeals reversed The district
Courts Summary Judgment ruling and Concluded Jett
Presented Sufficient evidence To go To trial on
The Causes of Action, see Jett v. Penner, 439 F.3d
1093 (9th Cir. 2006), but see Also, Leslie v. Grupo ICA, 198
F.3d 1152 (9th Cir. 1999) (quoting Anderson 477 u.s. at 255
106 s. Ct. 2505) in Addition [The Non-Movants] declaration
is to be Accepted as true, (see Also, Allen v. Keenan)
91 F.3d 1275 (9th Cir. 1996), Element of the Non-Movants

Claim, The non-movant should be able to Answer the Motion by arguing that the evidence raises a fact issue, which must be resolved at Trial.

II Defendants failed to Carry their Burden that Material Dispute" facts do not exist to entitle Defendant Francis Ko, Summary Judgment on Plaintiffs Eighth Amendment Claim deliberate indifference,

Standard for Eighth Amendment denial of Medical Treatment as stated in Two Supreme Court Cases, Farmer V. Brennan, 511 U.S. 825, 834, 114 S. Ct 1910, Estelle V. Gamble. 429 U.S. 104, 97 S. Ct. 285 (1976) for Under the Eighth Amendment, an inmate is entitled to Medical Care for "Serious Medical Needs" the Ninth Circuit Court described a serious Medical Need as " one that has been diagnosed by a Physician as Mandating Treatment or one that is so Obvious that even a Lay Person would easily recognize the Necessity for a doctor's Attention, Jett V. Penner, 439 F.3d 1091, 1096 ( 9th Cir. 2006) here, the defendant Francis Ko does not deny the fact that Plaintiff has a Serious Medical Need for Pain Medication, the defendant Francis Ko, only Argument is that

22 of 32

Plaintiff didn't request any Alternative Pain Medication, Plaintiff version of Events and facts differ greatly From the defendant Francis Ko, Plaintiff contends That he requested the Alternative Pain Medication on several Occasions, specifically on April 24, 2014, June 16, 2014 and July 22, 2014 Plaintiff was denied his Eighth Amendment right to Medical care when the defendant Francis Ko, denied Plaintiff Alternative Pain Medication which caused the Plaintiff to Suffer Significantly in Physical Pain, Additionally, Plaintiff submitted his 7362 Medical request form on June 2, 2014, requesting the Alternative Pain Medication, in fact, the Number Ten is also Marked and Checked off on the Pain Scale on the 7362 Medical request, This alone Tells The Provider That the Patient is in Significant Pain, Plaintiff has Neupathic Pain, however, Neuropathic Pain is (Chronic Pain) Taylor V. Garcia 2015, U.S. Dist, LEXIS 135918 (7th Cir 2015) See Hallett 296 F.3d 732, 746 (9th cir, 2002) delay of Medical Treatment does Not Constitute deliberate indifference unless delay Led to Further Injury, here, the defendant Francis Ko, does Not Assert

The Plaintiff's Pain Condition was not chronic, in Fact, The defendant diagnosed the Plaintiff as a Patient with Chronic Pain, this meets The <u>subjective and objective components</u>,

"The defendant francis Ko, ~~Francis~~ has Fail to Carry his burden that material dispute" Facts do not Exist to Entitle this defendant summary Judgment on Plaintiffs Eighth Amendment Claim of Failure to Provide Alternative Medication and denial of Medical Care, on June 16.2014, ~~July~~ 22.2014

"The defendant simply relies on his Claim that after Plaintiffs Morphine Tablets were discontinued", Plaintiff never requested the Alternative Pain Medication, however, "Plaintiff again contends that he requested Alternative Pain Medication for his Chronic Pain Condition but was refused the requested treatment by the defendant francis Ko, which Caused the Plaintiff to suffer The unneccessary wanton infliction of Physical Pain and Likewise violated Plaintiffs Eighth Amendment rights to basic Medical Care, (see <u>Exhibit, one</u> "Medical request for medication" with Affidavit).

24 of 32

1  The Defendants are not entitled to Qualified immunity
2  in this Case,
3
4
5  Under Saucier J. Katz, 533 U.S, 194, 200-201 (2001).
6  To determine whether qualified immunity exists, The Court
7  Must determine whether the right is "Clearly established",
8
9  the Court Must examine whether qualified immunity Protects a
10 Prison doctor and or Prison officials from a suit charging violations
11 of the Eighth Amendment's Proscription Against Cruel and Unusual
12
13 Punishment" as the Supreme Court has emphasized, qualified immunity
14 is "An Entitlement Not To Stand Trial" that is "An immunity from
15
16 Suits Rather than a mere Defense to Liability" Mitchell V. Forsyth
17 472 U.S, 511, 526, 105 S, Ct, 2806, 86 L. Ed. 2d 411 (1985),
18 (Emphasis in Original) As A Consequence qualified immunity
19 "Safe guards all but the Plainly incompetent or those who
20 Knowingly Violate the law" Brewster V, Bd of Educ. of the
21 Lynwood Unified Sch Dist 149 F.3d 971, 977 (9th Cir, 1998)(quoting
22 Malley V, Briggs, 415 U.S, 335, 341, 106 S, Ct 1092, 89 L. Ed
23 2d 271 (1986)) this standard "Allow Ample room for reasonable error
24
25 on the Part of the [officials] Know V, Southwest Airlines 124 F.3d
26
27 1103, 1109 (9th Cir, 1997) it encompasses both Mistakes of facts and
28 Mistakes of law Butz V, Economy 438 U.S, 478, 507, 98 S. Ct, 2894

1  ,51 L.Ed 2d 895 (1979) it shields government officials
2  performing discretionary functions from liability for civil
3  damages unless their conduct violates clearly established
4  statutory or constitutional rights of which a reasonable
5  person would have known, Harlow V. Fitzgerald 457 U.S.
6  800, 818, 102 S.Ct. 2727, 73 L.Ed 2d 396 (1982),
7
8
9  or who makes a decision that even if constitutionally decient reasonably
10 misapprehends the law governing the circumstances they confronted
11 Saucier V. Katz   533 U.S. 194 2d 206, 121 S.Ct. 2151  150 L.Ed
12 2d 272 (2001),
13
14 Resolving the issue of qualified immunity involves a two-step
15 inquirery, First we must ask whether "taken in the light most
16 favorable to the party asserting the injury the facts alleged show
17 the officials conduct violated a constitutional right" Saucier V. Katz
18 533 U.S. at 201, 121 S.Ct. at 2156, A negative answer ends the
19 analysis with qualified immunity protecting the defendants from
20 Liability Id if a constitutional violation occured, a court
21 must further inquire "whether the right was clearly established"
22 Id." if the law did not put the official on notice then their
23 conduct would be clearly unlawful Summary Judgment based
24 on qualified immunity is appropriate "Saucier 538 U.S. at 202,
25 121 S.Ct. 2151, See Also Siegert V. Gillex 500 U.S. 226, 232
26 111 S.Ct. 1789, 114 L.Ed 2d 277 (1991) A public official is not

Entitled to qualified immunity when the contours of the
alleged violated rights were sufficiently clear that a
reasonable official would understand that what he (was) doing
[violated] that right " Osolinsk v. Kane  92 F.3d 936 (9th Cir.
1996) (Alterations in Original) (Citation and internal quotations
omitted)

Deliberate indifference against the Plaintiff in addition, defendant
Francis Ko, also contends that because there was Methamphetamine
found in the Plaintiffs urine sample he used his Professional
Judgment when he decided to discontinue the Plaintiffs Morphine
tablets because the Combination of Morphine and Methamphetamine
in Plaintiffs body created a Potential serious risk to his
health, however,

The defendant Francis Ko, fails to Point out and Address the
[F]act that After Learning the Morphine tablets would be
discontinued, The [P]laintiff requested Alternative Pain Medication
on several dates, "April 24, 2014", June 16, 2014" and July 22,
2014", which Plaintiff was denied his Eighth Amendment right
to Medical Treatment, by the Above defendant Francis Ko,
however, After Plaintiff Filed his health Care Appeal on June

27 of 32

19, 2014, requesting Alternative Medical Care and Medication, The defendant Michele Ditomas immediately Partially granted Plaintiffs Appeal For Alternative Pain Medications and Plaintiff received The Medication The same day,

This Alone also Proves Plaintiff was Entitled to Medical Treatment, The law was clearly established that a Prison inmate is Entitled Medical Care, Under the Eighth Amendment, The defendant Francis Ko, Violated the Eighth Amendment of the United States Constitution when he denied Plaintiff his Eighth Amendment rights to Medical Treatment, when Plaintiff requested Alternative Medication For his Chronic Pain on April 24, 2014, and June 16, 2014, and on July 22, 2014, The defendant Francis Ko, refused to Provide Any Treatment and rushed the Plaintiff Out of his Office and Left the Plaintiff to Suffer the Unneccessary infliction of Physical Pains, however, the defendant Francis Ko, is not Entitled to qualified immunity in this Case Under Mailley V. Briggs. 475 U.S. 335, 341 (1986) Saucier V. Katz, 533 U.S. 194, 200-201 (2001),

As Plaintiff has Clearly Pointed Out in Farmer V. Brennan, 511 U.S. 825, 114 S. Ct. 1970, 1976, 128 L. Ed. 2d 811 (1994)

the Eighth Amendment to the U.S. Constitution of the United States Proscribes the infliction of Cruel and Unusual Punishment." The Amendment imposes upon Prison officials the duty to Provide humane conditions of Confinement, Farmer, 511 U.S. 825, including the Obligation to Provide Medical Care to those whom it has incarcerated, citing Estelle V. Gamble 429 U.S. 97, 103-04, 97 S. Ct. 285, 290-91, 50 L. Ed. 2d, 251 (1976), here, After Plaintiffs Morphine Tablets were discontinued, the Plaintiff requested Alternative Pain Medication as Stated in the body of this Opposition, Plaintiff was refused Medical treatment on all stated dates, April 24, 2014, June 16, 2014 and July 22, 2014.

The defendant Francis Ko, does Not Contend that he didn't know Plaintiffs Medical Condition was Serious, his Only Contention is that Plaintiff didn't request any Further treatment, however, the Plaintiff has Provided the Court with evidence and Medical records Authinticated and 602 health Care Appeals and the 1362 health Care request showing he requested Pain Medication, however, Plaintiff (see 1362 request for Medication Attached as Exhibit. one.) (Exhibits Attached to FAC)

1  was denied his Federal rights and was refused Medical
2  Care, Alternative Pain Medication.

3       The Supreme Court decisions described Cruel and
4  Unusual Punishment as those that "involve torture or
5  a Lingering death." Weems v. United States, 217 U.S. 349
6
7  310, 30. S.Ct. 544, 54 L.Ed. 793 (1910), or "the Wanton
8  Infliction of Pain".
9
10

11     The Ninth Circuit Court of Appeals grafted
12 a different Formulation on the Supreme Courts holding
13 in Estelle, The Court correctly Observed that the
14 Unneccessary and wanton infliction of Pain upon
15 incarcerated indiviuals Under Color of Law Constitutes
16 a Violation of the Eighth Amendment .(quoting Estelle.
17 429 U.S. at 104. , Plaintiff Allegations of deliberate indifference
18 and Plaintiffs Eighth Amendment Rights Violation Failure and
19 refusal to Provide Alternative Medication and Medical Care
20 after Plaintiff requested Medical Treatment, Supports a Section 1983
21 Claim to Establish a Prima Facie Case Plaintiff Must Allege and
22 show that defendant Francis Ko Acted to cause Physical Pain
23 to the Plaintiffs Medical Condition, The Injury Asserted in this Case is
24 the deliberate indifference Conduct's Chilling effect on Plaintiffs Eighth Amend
25 Ment Rights, Furthermore, Because the Plaintiffs Version of

Events totally differ from that of defendants version of events, And because of these factual disputes identified herein That the defendant Francis Ko, is not Entitled to Summary Judgment based upon qualified immunity, Lolli v. County of Orange, 251 F.3d 410,422 (9th Cir. 2003) (the "Facts in dispute Bearing on the question on qualified immunity" Made Summary Judgment on that ground inappropriate) see Watts v. McKinney 394 F.3d 710 (9th Cir. 2005) which is right on Point,

if the Court Compare Saucier with Farmer and Jett the defendants Are not Entitled to summary Judgment based on qualified immunity on Plaintiffs Eighth Amendment Claim of failure to Provide and refusing to Provide Alternative Pain Medication for Plaintiffs ongoing Pain Condition,

see Willard v. Moreno, U.S. Dist. Lexis 23214... February 17, 2017 opinion) defendant was not Entitled to Summary Judgment on the merits of Plaintiff Claim, in his Appeal, Plaintiff Complained of the Precise events that he alleged in his Claim against Defendant and requested to see a Physician because he was still in Pain, the Court is Obligated to Credit the Nonmoving Party's version of the events and thus demonstrates a Purposeful act or Failure to respond to Plaintiffs Pain, see Willard v. Moreno 2017 U.S. Dist. Lexis 23214, February 17, 2017, opinion),

The district Court was on Point in <u>willard</u> the Court stated, the evidence also shows that Plaintiff Filed a Patient/inmate health care Appeal with emergency written at the top of it that he Attached as an exhibit to both his Complaint and his Opposition, <u>willard v. Moreno</u> <u>2017 U.S. Dist. Lexis 23214</u>... February 17, 2017 opinion,

Finally, Plaintiff has Attached "<u>Verifying Medical Evidence</u>" that the refusal and delay of Medical Treatment Actually harmed him, see <u>Longston v. Peters</u>, 100 f.3d 1235, 1240-41 (7th Cir. 1996), <u>Coleman v. Rahija</u>, 114 f.3d 778, 785 (8th Cir. 1997) A Plaintiff need Not Provide expert testimony if the medical records submitted would "<u>Assist</u>" the Jury in determining whether a delay exacerbated the Plaintiff's condition or otherwise harmed him", <u>williams J. Liefer</u>, 491 f.3d 710, 715-16 (7th Cir. 2007), see <u>Grieveson v. Anderson</u>, 538 f.3d 163, 779 (7th Cir. 2008),

Executed on: December 11, 2017

Signature, _Derrick Owens_
Pro se Plaintiff

(Exhibit. one.)

STATE OF CALIFORNIA — DEPARTMENT OF CORRECTIONS AND REHABILITATION                    EDMUND G. BROWN JR., GOVERNOR

**DIVISION OF ADULT OPERATIONS**
**CALIFORNIA MEDICAL FACILITY**
1600 CALIFORNIA DRIVE
Vacaville, CA 95687
(707) 448-6841



# AFFIDAVIT OF CUSTODIAN
# OF MEDICAL RECORDS

RE: Owens, Derrick
Cdcr# V49527

Denise Stanley HRT 2 , Supervisor, Custodian of Records at California Medical Facility, Vacaville, California, being duly sworn, deposes and says as follows:

a)  That the affiant is the duly authorized custodian of Medical Records for the California Medical Facility in Vacaville, California, and has authority to certify said records, and,

b)  that the copy of the medical records attached to this request is a true copy of all the records described in the request for records received by this facility on _____Nov. 4, 2016_____ , and,

c)  that the records were prepared by the personnel of the hospital, staff physicians, or persons acting under the control of either, in the ordinary course of hospital business at or near the time of the act, condition or event.

d)  Part of the records produced herewith were prepared by other businesses or agencies and accordingly this custodian cannot address the mode of preparation of such records or the accuracy of the information contained therein.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on _____Dec. 2, 2016_____    At _____Vacaville_____ California.

Signed: _____
Custodian

_____Denise Stanley HRT 2, Supervisor_____
Type or Print Custodian's Name

Witnessed _____

Or

e)  I hereby declare under penalty of perjury that after a thorough search of my files, California Medical Facility does not have any records as described on the attached AUTHORIZATION.

Date: _____    Signed: _____
Custodian

_____
Type or Print Custodian's Name

Edmund G. Brown, Jr. Governor



# CALIFORNIA CORRECTIONAL
# HEALTH CARE SERVICES



# RECEIPT FOR COPY OF HEALTH RECORDS

Received from, <u>Denise Stanley, HRT II,</u> Custodian of Unit Health Records, at California Medical Facility, a copy of the California Department of Corrections and Rehabilitation (CDCR) Unit Health Record (UHR) or portions thereof; regarding treatment of: <u>OWENS, DERRICK</u>       CDC# <u>V49527</u> , from
Name of inmate/patient

The date of <u>07/01/2011</u>   to   <u>11/09/2016</u>       Volumes copied from <u>Euhr</u>

TO: <u>OWENS, DERRICK</u>

#PAGES <u>1032</u>

Date: <u>11/2/16</u>     Signed   _Derrick Owens_          COPIED BY  <u>S.K.</u>

| | | |
|---|---|---|
| ☐ **ALL MEDICAL** | ☒ **LABS** | ☐ **All Mental Health** |
| ☒ **Orders** & MED RECON | ☒ **X-Ray** | ☐ **MH 2 (7388)** |
| ☐ **Consents** | ☒ **Chronos** | ☐ **MH 3 (7230)** |
| ☒ **Notes** | ☒ **Consults** | ☐ **MH 4 (7386)** |
| ☒ **MARs** | ☒ **Outside/ Fac** /INPATIENT | ☐ **MH CHRONOS** |
| ☐ **H&P** | ☐ **Dental** | ☐ **RELEASE PSYCH** |
| ☐ **Public/Health** | ☐ **RELEASE  INFO TO** | **INFO** |
| ☐ **HIV/Aids tests** | ☐ **OTHER** Problem List | **OTHER** |
| ☐ **Alcohol/drug abuse** | | |

---

1. **Disability Code:**          2. **Accommodation**          3. **Effective Communication**

   TABE score $\le 4.0$          Additional time              P/I asked questions
   DPH    DPV    LD          Equipment    SLI            P/I summed information
   DPS    DNH              Louder    Slower          **Please Check one:**
   DNS    DDP              Basic    Transcribe            Not Reached    Reached
                   Other*                  * See Chrono / Notes

4. **Comments** _____ .

   Delivery Completed by: _____

0715468

STATE OF CALIFORNIA
CDC 7362 (Rev. 03/04)

# HEALTH CARE SERVICES REQUEST FORM

DEPARTMENT OF CORRECTIONS

## PART I: TO BE COMPLETED BY THE PATIENT

*A fee of $5.00 may be charged to your trust account for each health care visit.*

**If you believe this is an urgent/emergent health care need, contact the correctional officer on duty.**

REQUEST FOR:   MEDICAL ☒   MENTAL HEALTH ☐   DENTAL ☐   MEDICATION REFILL ☐

| NAME OWENS | CDC NUMBER V-49527 | HOUSING N/33 |
|---|---|---|

| PATIENT SIGNATURE   Derrick Owens | DATE 6-2-14 |
|---|---|

REASON YOU ARE REQUESTING HEALTH CARE SERVICES. (Describe Your Health Problem And How Long You Have Had The Problem)

I NEED To see my Primary CARE Provider concerning Medication Thank You

*NOTE: IF THE PATIENT IS UNABLE TO COMPLETE THE FORM, A HEALTH CARE STAFF MEMBER SHALL COMPLETE THE FORM ON BEHALF OF THE PATIENT AND DATE AND SIGN THE FORM*

## PART III: TO BE COMPLETED AFTER PATIENT'S APPOINTMENT

☐ Visit is not exempt from $5.00 copayment. (Send pink copy to Inmate Trust Office.)

## PART II: TO BE COMPLETED BY THE TRIAGE REGISTERED NURSE

| Date / Time Received: 06.04.14 @ 0802 | Received by: |
|---|---|
| Date / Time Reviewed by RN: 06.04.14 @ 0802 | Reviewed by: |

S:                                        Pain Scale:  1 ② 3 4 5 6 7 8 9 ⑩

O:   T:       P:       R:       BP:           WEIGHT:

A:

P:

☐ **See Nursing Encounter Form**

E:

| APPOINTMENT SCHEDULED AS: | EMERGENCY (IMMEDIATELY) ☐ | URGENT (WITHIN 24 HOURS) ☐ | ROUTINE (WITHIN 14 CALENDAR DAYS) |
|---|---|---|---|

| REFERRED TO PCP: | DATE OF APPOINTMENT: |
|---|---|

| COMPLETED BY 2U1 | NAME OF INSTITUTION CME |
|---|---|

| PRINT / STAMP NAME 2U1 | SIGNATURE / TITLE | DATE/TIME COMPLETED 06.04.14 @ 0802 |
|---|---|---|

CDC 7362 (Rev. 03/04)    Original - Unit Health Record    Yellow - Inmate (if copayment applicable)    Pink - Inmate Trust Office (if copayment applicable)    Gold - Inmate

Derrick Owens, J49527
California Medical facility
    P.O. BOX, 2000
Vacaville, California
    95696.

In the United States district Court
Eastern district of California, Sacramento division

Derrick Owens,
        Plaintiff,
    V.
Jackie Clark et. al.,
        Defendants.

Declaration of Derrick Owens,
in Support of Plaintiffs Opposition
to defendants Summary Judgment or,
In the Alternative summary adjudication
of issues,

1. Derrick Owens, plaintiff, hereby declare as follows;

1. All of the following is based on My Own Personal knowledge and,
if called to testify, I could so competently.

2. I Am a State Prisoner at the California Medical facility in Vacaville
California ("CMF")

    <u>; Declaration of Derrick Owens;</u>

3.
Plaintiff Derrick Owens was Physicall injured in this Case by the
defendant Francis Ko, when he refused to Provide Alternative Pain

- 1 -

Medications for My Chronic Pain, the defendant Francis Ko, "Completely" disregarded "My" Medical request Form ("1362") "on June 16, 2014, I Put the request for Medication in on June 2, 2014, and was seen on June 16, 2014.

4. The defendant in his declaration Claim He didn't initially substitute My Morphine with another Pain Medication because he wanted the Morphine to "wash out of My System" and get a baseline Pain Level but he refused me Alternate Pain Medication when I requested on June 16, 2014, and July, 22, 2014.

5. My Morphine Tablets were being tapered on April 24, 2014 and was Completely stoped on May 14, 2014, and I was not receiving any treatment for My Pain,

6. I was left in My Prison Cell in Pain Laying in Bed and Most Nights My Cervical Spine and Back and Sciatic Nerv was really Painful And I Also Emotionally suffered.

7. With help From Nurses I submitted My Medical request For Medication on June 2, 2014, and was seen by Ko, on June 16, 2014.

- 2 -

8. At the defendants declaration At # 11. the defendant Francis Ko, claim " After My Morphine was Completely Cut off, he Saw me three times : June 16, 2014," June 22, 2014," July 24, 2014, During the first two visits, Plaintiff did not request any " Alternate Pain Medication" but I denied This Claim because I requested medication at all my Appointments with the defendant.

9. I Never Seen The defendant on "June 22, 2014." I was Seen on June 16, 2014, July 22, 2014, and July 24, 2014. I requested Alternative Medication at all the above dates, ( the defendant Francis Ko, claim he seen me on June 22, 2014 )( Ko, decl. at. 11)

10. I was Never Called back in for a baseline Pain Assessment I was Just Turned away and Left to Suffer Significant Pains in My Body. No baseline Assessment was ever done, thats why I request Alternative PAIN Medication by submitting my "1362" on June 2, 2014.

11. The Plaintiff does Not debate the fact that the defendant Francis Ko, had to discontinued My Morphine tablets, due to the Alleged Violation of the Pain Contract, I claim I was denied Alternative Medication for My Pain when I requested. on June 16, 2014 And July 22, 2014.

12. Francis Ko, Also is Claiming Plaintiff Never requested Alternative Pain Medications, I requested The Alternate medical treatment again on June 16, 2014, July 22, 2014, but the defendant refused and rushed me out of his office.

13. I even requested increased doses of the Morphine tablets when I was still on Morphine due to still experiencing significant Pains all over my Body." ( This was way before the Pain Contract was ever Allegedly violated)

- 3 -

14. I Plan To Produce all My Medical records Authinticated at trial To show I have a serious Medical Condition that requires Medical Treatment.

15. I Plan to Produce at trial My Medical request dated June 2, 2014, to show I did request Alternate Pain Medication on June 16, 2014, as well as My 602 appeal dated June 19, 2014, And All Authinticated records Pretaining To this Case.

16. The two defendants Teresa Link and wendy Harris Violation of Known ("CdCR") Policies violated my rights, wendy Harris delayed me with receiving emergency medical Care for I was in Significant Pains.

17. I referr The Court To review My Medical records I Have Attached to My First Amended complaint And I also refer The Court To review my medical records I submitted with My Pre Trial Motions, this will show the Court that I've Been requesting medical care for Many years, (This court has said I May refer To These records).

I declare under the Penalty of Perjury, Under the Laws of the United States, that the foregoing is true and Correct.

Executed this 11th day of December, 2017, in Vacaville California.

Jennick Owens

DERRICK Owens
Pro Se Plaintiff

- 4 -

1  Derrick Owens, V4952
2  California Medical Facility
3      P.O. Box 2000
4  Vacaville, California, 95696
5
6          In the United States District Court
7          Eastern district of California, Sacramento division
8
9  Derrick Owens,
10              Plaintiff,          Case No: 2:15-CV-00982-TLN-KJN
11                                  Plaintiffs            disputed
12      V.                          Facts of defendants Summary
13  Jackie Clark et. al.;           Judgment Motions, Memorandum of
14          Defendants,             Points and Authorities; Sworn
15                                  declaration And Affidavit
16
17
18  Disputed Fact at No.1... Plaintiff Can Prove disputed facts
19  Through Personal Knowledge, statements in Verified Complaint,
20  Declarations Pursuant to Fed, R. Civ. P, 56 (2)(e)(2)(3)(7)
21  Exhibits Plaintiff deny and dispute the Sworn Statements by Defendants
22  and also defense Attorney, The facts are Explicit That Plaintiff
23  was denied his Eighth Amendment Rights when the defendants Francis Ko,
24  refused Plaintiff Medical treatment for Chronic Pain Condition, defendants
25  Violated his Job duties To Prescribe Medications for Patients, [Plaintiff]
    on June 16, 2014 and July 22, 2014.

                          - 1 -

, Deliberate indifference refusing To Provide
Alternative Pain Medication, Plaintiff statement of disputed
Facts State:

Plaintiff Claims that After his Morphine Tablets were
discontinued due to the Pain Contract Jidation, Plaintiff requested
Alternative Pain Medication due to being in Chronic and Substantial
Pains, Plaintiff Claim also that he requested the above treatment
on April 24, 2014, during a Medical Appointment with the defendant
Francis Ko, Plaintiff also Claim he requested Alternative Pain Medication
after he submitted his "medical request 1362 form" on June 2, 2014
and was seen by the defendant doctor Francis Ko, "on June 16, 2014"
Plaintiff Claim that he also requested the Alternative Pain Medication
"on July 22, 2014." but was denied on all the above dates by
the above defendant, Francis KO,

Memorandum of Points and Authorities

Plaintiff filed a Civil rights Complaint against the defendant's under
u.s.c. §§ 1983 Plaintiff "Derrick Owens" is representing his self
"in Pro Per,"

- 2 -

Pursuant to the Courts Order, the Court set the following : EAch Party has until December 15, 2017 To file dispositive Motions.

<u>Plaintiff dispute Fact of Defendants</u>

<u>Summary Judgment</u>

<u>Plaintiff Derrick Owens, Dispute   Claims</u>
<u>Made by the defendant Francis Ko. :</u>

Defendant Francis Ko. statement that Plaintiff never requested Alternative Pain Medication After his [Plaintiff] Morphine Tablets was Completely discontinued, Plaintiff has been Saying from day one That he requested Alternative Pain Medication for his Chronic Pain Condition but was refused Medical Care on April 24, 2014, June 16, 2014 and "July 22, 2014", by the defendant Francis Ko, which left Plaintiff Suffering unnecessary wanton PAINS, .

Plaintiff Dispute No. 2 : the defendant Francis Ko. statement that Plaintiff never Put in A Medical request "7362" for Medication, Plaintiff did Put in a Medical request on June 2, 2014, requesting Pain Alternative Pain Medication but was denied on "June 16, 2014" by the defendant. Francis Ko, . (see 1362 Form Attached As Exhibit .1.)

- 3 -

Plaintiff Dispute No. 3: The defendant Wendy Harris Statement

that she does not make the determination with Processing

Medical Appeals as Emergency,

Plaintiff Put in his Medical Appeal 602 requesting emergency

Processing because Plaintiff had been denied Alternative Pain

Medication on June 16, 2014, by the defendant Francis Ro. Plaintiff

requested emergency Care because he was Suffering in

chronic Pains due to the denial of Medical treatment as

stated above, ~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

~~~~~~~~~~~~~~~.

Plaintiff Dispute No 4: The defendant Wendy Harris Statement

that she does not make the determination with Processing

Emergency Medical Appeals as Emergencies,

Plaintiff claim the determination for Processing Medical

Appeals is made by the [Appeals Coordinator] as stated

in the California Code of regulations Title 15, Sections

3084.9. (a) (1) (A) (B) (2) (3) (4),

Plaintiff Dispute No. 5: The defendant Teresa Link Statement

that she does not know of Any (CdCR), or that there are no

cdcr regulations or Policies Preventing Same gender Nursing

- 4 -

staff from collecting urine samples from male inmates
medical reasons, however, Plaintiff states here that Although
the purpose for Plaintiffs urine sample collection was for
determining the level of Morphine in Plaintiff system to ensure that
he was in fact, ingesting his Morphine, Plaintiff was also Made
to provide his urine sample for the purpose of testing for
a Controlled Substance Cocane, Methamphetamines, this requires
staff to be the same gender of the inmate being tested Accord-
ing to the Policy and Procedure of the department of Corrections
and rehabilitions, Per. (POM) department Operations Manual
Section 52010. m. 18. and Article 15 - Controlled Substanes
Per. [DOM] 52010.1., 52010.2., 52010.2.1, 52010.3.,

Plaintiff has been saying from the very beganning
of this case that the Above Policy was Violated by
the defendant Nurse Zink, [the Above (POM) Section
is Also in Compliance with the California Code of regulat-
ions Title 15. Section 3290 (a).],

Plaintiff Dispute No. 6: Defendant Michele Aitomas
and Defendant Jackie Clark Statement on April 11.2014. Urine
Toxicology test showed that Plaintiff had Methamphetamines in his,

- 5 -

Plaintiff claim the Urine Collection Enviornlent was dirty and Plaintiff was not Provided hand glaves during the Procedure which Violates the department Policy Per. DoM. section 52010.17, and 52010.18, The defendants, however, fail to Point out that Plaintiff in fact requested Alternative Pain Medication for Sure when Plaintiff submitted his "7362" health Care request on "June 2.2014," and was denied Treatment on June 16.2114, Medication Medical Appointment Just Like on April 24.2014, and "July 22, 2014", . defendant Francis do. Violated his duties to Parscribes Medical Treatment/writes Prescriptions. at 70%. (see "Exhibit. 2".) Attached herein).

Executed on : December 11, 2017

Signature Rudy Owens

Pro se Plaintiff

( Exhibit . 1 . )

STATE OF CALIFORNIA Case 2:15-cv-00982-TLN-KJN   Document 24   Filed 10/08/15   Page 91 of 150 DEPARTMENT OF CORRECTIONS
CDC 7362 (Rev. 03/04)

# HEALTH CARE SERVICES REQUEST FORM

| PART I: TO BE COMPLETED BY THE PATIENT |
|---|

*A fee of $5.00 may be charged to your trust account for each health care visit*

If you believe this is an urgent/emergent health care need, contact the correctional officer on duty.

REQUEST FOR:   MEDICAL ☒   MENTAL HEALTH ☐   DENTAL ☐   MEDICATION REFILL ☐

NAME: OWENS

CDC NUMBER: V-49527

HOUSING: M33

PATIENT SIGNATURE: Derrick Owens

DATE: 6-2-14

REASON YOU ARE REQUESTING HEALTH CARE SERVICES. (Describe Your Health Problem And How Long You Have Had The Problem)

I NEED To SEE my Primary CARE Provider Concerning Medication Thank You

*NOTE: IF THE PATIENT IS UNABLE TO COMPLETE THE FORM, A HEALTH CARE STAFF MEMBER SHALL COMPLETE THE FORM ON BEHALF OF THE PATIENT AND DATE AND SIGN THE FORM*

| PART III: TO BE COMPLETED AFTER PATIENT'S APPOINTMENT |
|---|

☐ Visit is not exempt from $5.00 copayment. (Send pink copy to Inmate Trust Office.)

| PART II: TO BE COMPLETED BY THE TRIAGE REGISTERED NURSE |
|---|

Date / Time Received: 06.04.14   0800   Received by:

Date / Time Reviewed by RN: 06.04.14   0802   Reviewed by:

S:   Pain Scale:   1   2   3   4   5   6   7   8   9   10

O:   T:   P:   R:   BP:   WEIGHT:

A:

P:

☐ See Nursing Encounter Form

E:

| APPOINTMENT SCHEDULED AS: | EMERGENCY (IMMEDIATELY) ☐ | URGENT (WITHIN 24 HOURS) ☐ | ROUTINE (WITHIN 14 CALENDAR DAYS) ☒ |
|---|---|---|---|
| REFERRED TO PCP: | | DATE OF APPOINTMENT: | |
| COMPLETED BY | | NAME OF INSTITUTION CMF | |
| PRINT / STAMP NAME | SIGNATURE / TITLE | | DATE/TIME COMPLETED 06.04.14 |

CDC 7362 (Rev. 03/04)   Original - Unit Health Record   Yellow - Inmate (if copayment applicable)   Pink - Inmate Trust Office (if copayment applicable)   Gold - Inmate

( Exhibit. 2. )

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS AND REHABILITATION
DIVISION OF CORRECTIONAL HEALTH CARE SERVICES

*SHADED AREA TO REFLECT RECLASS POSITION NUMBER ONLY*

# DUTY STATEMENT

| RPA | EFFECTIVE DATE: |
|---|---|

| CDCR INSTITUTION OR DEPARTMENT | POSITION NUMBER (Agency – Unit – Class – Serial) |
|---|---|
| California State Prison-Solano | |
| UNIT NAME AND CITY LOCATED | CLASS TITLE |
| Clinical Services | Physician & Surgeon |
| WORKING DAYS AND WORKING HOURS<br>a.m. to   p.m.  (Approximate only for FLSA exempt classifications) | SPECIFIC LOCATION ASSIGNED TO |
| PROPOSED INCUMBENT (If known) | CURRENT POSITION NUMBER (Agency – Unit – Class – Serial) |

YOU ARE A VALUED MEMBER OF THE DEPARTMENT'S TEAM. YOU ARE EXPECTED TO WORK COOPERATIVELY WITH TEAM MEMBERS AND OTHERS TO ENABLE THE DEPARTMENT TO PROVIDE THE HIGHEST LEVEL OF SERVICE POSSIBLE. YOUR CREATIVITY AND INGENUITY ARE ENCOURAGED. YOUR EFFORTS TO TREAT OTHERS FAIRLY, HONESTLY AND WITH RESPECT ARE CRITICAL TO THE SUCCESS OF THE DEPARTMENT'S MISSION.

Under the general direction of the Chief Physician & Surgeon, in a State correctional Facility in the California Department of Corrections and Rehabilitation, to perform assigned medical work in a state institution or clinic; to maintain order and supervise the conduct of inmates; to protect and maintain the safety of persons and property; and to do other related work.

| % of time performing duties | Indicate the duties and responsibilities assigned to the position and the percentage of time spent on each.  Group related tasks under the same percentage with the highest percentage first. *(Use addition sheet if necessary)* |
|---|---|
| | **ESSENTIAL FUNCTIONS** |
| **70%** | Examines and diagnoses inmate/patient clientele illnesses and prescribes and administers medical treatment; orders and interprets; laboratory analysis and x-rays; writes prescriptions; counsels patients related to medical condition. |
| **20%** | Makes rounds in unit assigned; makes reports, records, and general progress of patients; consults and refers inmate/patient to specialty clinics; psychiatric referrals; instructs  and clinically supervises registered nurses, licensed vocational nurses and other Clinical Staff in medical protocols. |
| **10%** | Performs or assists in performing major and minor surgical procedures: attends committee and medical staff meetings.  Supervises pre- and post-operative care of surgical classes. |

1 Derrick Owens, V49527
2 California, Medical, Facility
3    P.O. Box 2000
4 Vacaville, California, 95696,
5
6
7              In the United States District Court
8              Eastern district of California, Sacramento division,
9
10
11 Derrick Owens,          | Case No: 2:15-CV-00982-TLN-KJN
12          Plaintiff,      | Plaintiff Derrick Owens statement of
13    V.                    | Disputed facts L.R. 56
14 Jackie Clark et. al.,   | Plaintiffs Concised statement of disputed facts
   Defendants,
15
16      Comes Now Plaintiff with A "Concise Statement"
17 of disputed fact, And in Opposition Motion of Summary
18 Judgment Alternative, deny defendants Summary Judgment
19
20
21 Pursuant to Local Rule 56.
22
23      Concised statement of disputed facts
24
25 (1). Plaintiff has Contended That he was refused      deposition transcripts Pages 22, 23, 24
26 Alternative Pain Medical for his Chronic Pain Condition
   After his Morphine Tablets were discontinued on.
27 April 24, 2014, Plaintiff requested the Alternative
   Pain Medication on April 24, 2014, June 16, 2014,
28 and July 22, 2014, but was refused treatment
   by The defendant Francis Ro, on all the Above
   dates.

- 1 -

(2) Plaintiff at his deposition hearing on April 24, 2017,
testified that the defendant Francis Ko, denied Plaintiff
Alternative Pain Medications on April 24, 2014
"June 16, 2014," and "July 22, 2014," and rushed
Plaintiff out of his Office,

[2] Plaintiff deposition transcripts Page 22

(3) Plaintiff testified at his deposition hearing
on April 24, 2017, that he didn't want to be
left in Pain, but that the defendant Francis Ko,
refused to Provide Alternative Pain Medication,

[3] Plaintiff deposition Transcripts Page 22

(4) Plaintiff testified at his deposition hearing
on April 24, 2017, that when the Morphine Tablets
were Completely stopped, he was basically
left with Nothing,

[4] deposition Transcripts Page 23

(5) Plaintiff testified at his deposition hearing
on April 24, 2017, that he Put in a Sick Call
Form 7362 request on June 2, 2014, to
See the Primary Care Provider Concerning
Medication,

[5] deposition Transcripts Pages 23, 24

(6) Plaintiff testified at his deposition hearing
on April 24, 2017, that he was seen again by
defendant Francis Ko, on June 16, 2014, and that
Plaintiff recalled the Visit with the defendant
Clearly, Plaintiff testified that he Spoke with
defendant Francis Ko, about Medications, because
Plaintiff was going through Pain,

[6] deposition Transcripts Page 25

- 2 -

(7) Plaintiff testified at his deposition hearing on April 24, 2014, that he told the defendant Francis Ko, he needed something for his pains. Plaintiff testified that the defendant Francis Ko, seemed upset and refused to provide Alternative Pain Medication and again rushed Plaintiff out of his office,

[7] deposition transcripts Page 25

(8) Plaintiff testified at his deposition hearing on April 24, 2014, that he was tortured by the defendant Francis Ko, Plaintiff also testified that just because a doctor is mad or a little upset, it doesn't give a doctor the right to because Cruel, Plaintiff testified that the defendant Francis Ko, also knew his Prognosis, he knew Plaintiffs pain was an ongoing thing,

[8] deposition transcripts Pages 50, 51

(9) Plaintiff has contended that the urine sample collection Procedures were violated by the defendant Teresa Zink and the defendant wendy harris violated Plaintiffs Eighth Amendment rights to Medical Care by delaying Plaintiffs Medical Treatment and she Also violated the Policy and Procedure as stated in All the Plaintiffs Filings including Plaintiffs First Amended complaint

[9] see Entire deposition transcript

- 3 -

(10) Plaintiff has been saying that he suffered the unneccessary wanton infliction of pain when he was refused medical treatment Alternative Pain Medication on April 24, 2014 "June 16, 2014" and "July 22, 2014", by the defendant Francis Ko.

10   Plaintiff Complaint and the deposition transcripts.

~~(11) plaintiff moves for trial and a date set for trial After ruling on defendants Summary Judgment Motion.~~

~~(12) plaintiff will also submit with the Motion for a trial date Set a Pre trial Statement when the Court orders.~~

: I Declare under the Penalty of Perjury that the foregoing is True and Correct:

Executed on December 11, 2017

Signature, Derrick Overly

– 4 –

1  Derrick Owens, V49527
2  California, Medical Facility
3      P.O. BOX 2000
4  Vacaville, California
5      95696,
6                    In the United States District Court
7                    Eastern district of California, Sacramento division
8
9
10  Derrick Owens, Plaintiff          Case No. 2:15-CV-00982-TLN-KJN
11                                    Plaintiffs Response to defendants
12             V.                     Statement of Undisputed Material Facts
13  Jackie Clark, et. al.,            in support of Plaintiffs Opposition
                Defendants            to defendants summary Judgment of,
14                                    in the Alternative summary Adjudication
                                      of issues
15
16
17  • Plaintiffs response to defendants Statement of Undisputed facts.
18  • in support of Plaintiffs Opposition to defendants Summary Judgment.
19
20
21          As to Defendant Francis Ko, M.D
22  Undisputed Material Facts                    Supporting Evidence
23  1. At All relevant times Plaintiff was a State   1. FAC
24  Prisoner incarcerated within the California   "   "   First Amendment Verified
25  department of Correction and rehabilitation (CDCR)   Complaint.
26  at the California Medical facility ("CMF")
27  in Vacaville California
28          (Plaintiff Admit)

-1-

| | |
|---|---|
| 2. At All relevant times, Defendant Francis Ko, M.D. was a Physician and Surgeon employed by CdCR at CMF in Vacaville California. (Plaintiff admits) | 2. Ko Decl. 1. |
| 3. Plaintiff's Complaint against Dr. Ko Only involves events that took Place in April and May 2014. (Plaintiff deny) (Admit in Part) | 3. Plaintiff deposition Transcripts at Pages 22, 23, 24, 25. 3. Owens Decl. 17:11-23 |
| 4. Plaintiff Aleges in his FAC that Dr. Ko violated his Eighth Amendment rights when he Tapered his Morphine on April 24, 2014, and did Not immediately Provide him with Alternate Medications. (Plaintiff Admits in Part and deny in Part) | 4. Plaintiff alledges that he Also was denied his Eighth Amendment Right when the defendant Francis Ko, refused to Provide Alternate Pain Medication on April 24, 2014 as well as on June 16, 2014 and July 22, 2014. (Plaintiff's deposition Transcripts at 22, 23, 24, 25) 4. FAC, IV, et Seq. Ko Decl 5... |
| 5. on April 22, 2013, Plaintiff entered into a Pain Management Agreement ("Agreement") with CdCR in Order to receive Morphine for his Alleged Chronic Pain Condition. (Plaintiff Admits) | ~~[struck through]~~ 5. Ko Decl. 6. |
| 6. Two of the Conditions agreed to by Plaintiff in the Agreement were Not to Check the Morphine Tablets and to submit to Urine tests, as ordered by the Provider, to detect improper use of medications not Prescribed. (Plaintiff Admits) | 6. Ko Decl. 6 |
| 7. on March 12, 2014, Nursing Staff Noticed and Suspected that Plaintiff was Not Swallowing and was Checking his morphine Tablets (Plaintiff Admits in Part and deny in Part) | 7. Ko. Decl 7. These Allegations were refuted as to Plaintiff Checking his Morphine tablets (see FAC at. P. 6.) |
| 8. After being notified by Nursing Staff that Plaintiff was suspected of Checking his Morphine Tablets, Dr. Ko, Ordered a Urine test for Plaintiff. (Plaintiff Admits) | 8. Ko. Decl 7. |

- 2 -

9. Plaintiff Submitted to a Urine Test on April 11, 2014, and the results of the test showed a Significant level of amphetamine in his System (Plaintiff Admit in Part And deny in Part)

Ko Decl. 8

The urine Sample was Contaminated As stated in The FAC at. p. 8.

10. Pursuant to the terms of Agreement, I then Ordered That Plaintiffs Morphine be discontinued and, on April 24, 2014, the order was Placed to reduce Plaintiffs daily Morphine dose by 25% each week until Completely off on May 24, 2014 this was required due to Plaintiffs Violation of the Agreement. (Plaintiff Admit in part and deny in part)

10. Ko, Decl, 8

The Urine Sample was Contaminated as Alleged in the FAC at. p. 8.

11. When Plaintiffs Morphine was Completely discontinued Dr. Ko did not initially Substitute his Morphine with another pain medication because he wanted the morphine to "wash out of his System" and get a baseline pain level, Once the morphine was tapered off completely, and only thereafter Could Plaintiffs baseline Pain be assessed (including location on his body, intensity, Character, and how it impacted his Activity of daily life [ADL's]. There was No way for Dr. Ko to Predict what kind and how much of alternative treatment Plaintiff would Need, it is Possible Plaintiffs Pain would be minimal of Nonexistent when completely off the Morphine and as a result, he would Not Need Alternative Pain Medications. (Plaintiff Admits in Part and deny in Part)

11. Ko Decl. 9

Plaintiff requested Alternative Pain Medication on June 16, 2014 and July 22, 2014 but was still refused treatment by the defendant Francis Ko,

(see Plaintiff deposition transcript at. p. 23, 24, 25,),

KO, Decl. 10.

1  12. Plaintiff Knew how to Seek
2  immediate Medical Attention or to
3  Communicate with Dr. Ko if his
4  Pain became unbearable at any time
5  Plaintiff knew he Could submit a
6  Form 7362 (health care Service
7  request) or Present to California
8  Medical Facility's treatment and
9  Triage Area 24 hours a day / 7
10 days a week for immediate
11 medical assistance, he Never
12 exercised either Option.
13     ( Plaintiff deny)

14 13. After Plaintiff's Morphine was
15 Completely Cut off, Dr. Ko Saw
16 Plaintiff three times; June
17 16. 2014, June 22. 2014, and
18 July 24. 2014. During the first
19 two visits, Plaintiff did not
20 request any Alternate Pain
21 Medication.
22     ( Plaintiff deny)

23 On July 24, 2014 Plaintiff requested
24 alternate Pain Medication and &
25 immediately Prescribed him
26 ibuprofen 400 mg and Nortriptyline
27 25 mg.  ( Plaintiff Admit)

---

12. Plaintiff submitted his
health Care request for Medication
on June 2. 2014
( see Exhibit. 1. Attached herein)

but was refused Medication
for his Pain
( see deposition transcript at. p. 23
24, 25)

13. Ko Decl. 11.
Plaintiff Submitted his health Care
request 1362 Form on June 2. 2014
( see Exhibit. 1.) Plaintiff was Never
seen on June 22, 2014, Plaintiff
was seen on June 16. 2014, July 22. 2014
and July 24. 2014

14. Ko. Decl. 12

- 4 -

| | |
|---|---|
| 1  15. The Only reason Dr. Ko discontinued<br>2  Plaintiffs Morphine was because he had<br>3  Violated The Agreement, Dr. Ko's Action to<br>4  discontinue the Morphine was Authorized<br>5  and Justified by the Terms of the Agreement,<br>6  especially due to the Potential health risk<br>7  Plaintiff having both Morphine and Methamphetamine<br>8  in his system, Plaintiff was well aware of that<br>9  Possibility when he entered into the Agreement<br>10  in question<br>11  ( Plaintiff Admit and deny in Part ) | 15. Ko Decl. 17<br><br>Plaintiff denied Using<br>Methamphetamines<br>(FAC at. 6, 7, 8, 9.) |
| 12  16. All of the Medical Care and treatment<br>13  rendered to Plaintiff by Dr. Ko, was appropriate<br>14  and Consistent with Plaintiffs Symptoms,<br>15  medical Condition and history, and, at all times,<br>16  within the Community Standard of Care and<br>17  Consistent with the degree of knowledge and Skill<br>18  ordinarily Possessed and exercised by Members of<br>19  my Profession under Similar Circumstances,<br>20  Dr. Ko, has never refused or denied Plaintiff<br>21  appropriate Medical treatment or evaluation.<br>22<br>23  ( Plaintiff deny ) | 16. Ko Decl. 14<br><br>Plaintiff Request Medical<br>treatment and was denied<br>Alternative Pain Medication<br>on June 16, 2014, after Submitting<br>his 1362 on June 2, 2014<br>(See Exhibit. 1.) |
| 24  17. Plaintiff received all reasonable and Necessary<br>25  care to address his Condition, at CMF, and the<br>26  treatment Provided was Consistent with the<br>27  Community Standard of Care and CDCR Policies<br>28  and Procedures.<br>( Plaintiff ) deny ) | 17. Ko Decl. 15<br>Plaintiff Alleged the Defendant<br>Francis Ko. denied Medical treatment<br>( FAC at. 3 ) |

- 5 -

| | |
|---|---|
| 18, at all times, Dr. Ko. Treated Plaintiff with dignity and respect in an honest effort to treat his condition, at no time did he refuse to provide Plaintiff with Medical care or treatment, At no time did he intentionally or knowingly Cause Plaintiff any injury or harm. (Plaintiff deny) | 18, Ko, Decl, 16 <br><br> Plaintiff alleged in his First Amended Complaint refused him Medical treatment (FAC at. 30, 24, 17, 3.) <br><br> Plaintiff Alleged in his Opposition to defendants summary Judgment that the defendant Francis Ko, Rushed Plaintiff out of him office at Page 4, 32. <br><br> Plaintiff Also Submitted his health care 7362 request for car but was also denied Alternate medications and Rushed Away (see Exhibit : 1.) |

### As to Defendant Teresa Link, R.N.

| Undisputed Material Fact | Supporting Evidence |
|---|---|
| 19. At all relevant times plaintiff was a State Prisoner incarcerated within the California Department of Corrections and Rehabilitation ("CdCR") at the California Medical Facility ("CMF") in Jacaville, California. <br> (Plaintiff Admits) | 19. FAC. |
| 20. At All relevant times, Teresa Link, RN, was employed by CdCR as a registered nurse at CMF in Jacaville California. <br> (Plaintiff Admits) | 20, Link Decl 2 |

- 6 -

21. in his First Amended Complaint ("FAC")
Plaintiff alleges that, in April 2014, Nurse Zink
Collected a urine sample from him in violation
of title 15, section 52010, IN. which requires
that staff observing the collection of a
urine sample be of the same gander as the
inmate being tested.

(Plaintiff Admits And deny in Part)

22. Title 15, Section 52010, IN. Applies only
to "Custody" situation, Not to medically-
related issues.

(Plaintiff deny)

23. there are No CdCR regulations or Policies
Preventing same-gender nursing staff from
Collecting urine sample from inmates for medical
reason.

(Plaintiff deny)

24. in this Case, in April 2014, Dr. Ko, issued an
order to Collect a urine sample From Plaintiff,
because nursing staff suspected that Plaintiff
was Cheeking his Morphine Tablets.

(Plaintiff Admit)

---

21. Zink Decl. 6.

Plaintiff Alleges in ("FAC")
that the defendant Zink
Violated the ("DOM") Department
Opperations Manual Section
52010, IN, 18,
(see "FAC" at 6.)

22. Zink Decl 6.

Plaintiff Alleges that Section 52010,
IN,18, of the "DOM" Applies to
All Staff (see, Exhibit 33, of the
("FAC")

23. Zink Decl 6

Plaintiff Alleges that the Policies
set by the (CdCR) Section 52010
IN,18, of the (DOM) Applies to All
Staff Members (see, Exhibit 33, of the
("FAC")

24. Zink Decl 7

| | |
|---|---|
| 25. The Purpose of Dr. Rois order was to determine the levels of Morphine in Plaintiff's System to Ensure that he was, in Fact, ingesting his Morphine<br><br>( Plaintiff Admit) | 25. Zink Decl. 1 |
| 26. The result of the Urine Collection Showed levels of both Morphine and Methamphetamine.<br><br>( Plaintiff Admit) | 26. Zink Decl. 1 |
| 27. Plaintiff also Complains that Nurse Zink did not use gloves when She handed him the receptacle for his Urine Sample, nurse Zink's Practice is to always wear gloves during the course of Urine Collections, Therefore, it is extremely unlikely that she was not wearing gloves in this case.<br><br>( Plaintiff deny) | 27. Zink Decl. 8<br><br>Plaintiff Alleges in his (FAC) that the defendant Zink (see "FAC" at Pages 7, 8, ) |
| 28. Even if nurse Zink had not worn gloves during Plaintiff's Urine Sample Collection it would have been irrelevant because any Physical Contact with methamphetamine would not have Caused Plaintiff to test Positive for Methamphetamine, Levels of Methamphetamine can only be found in a Urine Sample when someone has used Methamphetamine within a few days Prior to the test<br><br>( Plaintiff deny) | 28. Zink Decl 9.<br><br>Plaintiff Alleges in his (FAC) that if Nurse Zink had worn gloves and Provided gloves to the Plaintiff which also is required by the department (see Exh. 33, of the "FAC") (see. Exh. 1. Attached herein) Plaintiff would not have tested Positive for Methamphetamine |

As to defendant Michele DiTomas

| Undisputed Material Fact | Supporting evidence |
|---|---|
| 30. At all relevant times Plaintiff was a State Prisoner incarcerated within the California Department of Corrections and Rehabilitation ("CdCR") at the California Medical Facility ("CMF") in Vacaville, California <br><br> (Plaintiff Admit) | 30. FAC |
| 31. At all relevant times, Michele DiTomas, M.D. was the Chief Physician and Surgeon at CMF.   (Plaintiff Admit) | 31. DiTomas Decl 2. |
| 32. Plaintiffs only Complaint against CDCR is. DiTomas is that She was a Supervisor Physician and she had the Authority to Overturn Dr. Ko. order terminating Plaintiff Morphine. <br><br> (Plaintiff deny in Part and Admit in Part) | 32. FAC p 16 of 150 <br><br> Plaintiff Alleges that Dr. DiTomas had the Authority to Not only Over turn order terminating Plaintiffs Morphine, but Also order a repeat Urine Collection due to many Violations Made by defendant Zink <br> (see FAC at p. 16 |

- 9 -

| | |
|---|---|
| 1  33. Dr. Ditomas' only involvement in this case | 33.  Ditomas Decl. 3. |
| 2  is that she denied Plaintiffs appeal at the | |
| 3  First Level. | |
| 4    (Plaintiff Admit) ~~what are they ? (MMM)~~ | |
| 6  34. On April 11, 2014, a urine toxicology test | 34. Ditomas Decl 4. |
| 7  showed that Plaintiff had methamphetamine | |
| 8  in his body, in violation of the pain | Plaintiff Alleges in the |
| 9  management agreement entered into | FAC that the urine test |
| 10  between Plaintiff and the California Department | procedures were violated |
| 11  of Corrections and Rehabilitation, in 2013 | (see FAC at page, 7, 8,) |
| 12  | Plaintiff Alleges the Urine Sample |
| 13    ( Plaintiff deny ) | was Contaminated |
| 14  | |
| 15  35. Federal and State regulations recommend | 35. Ditomas Decl. 5 |
| 16  prescribing doctors to stop prescribed narcotics | |
| 17  where the risks to the patient outweigh | |
| 18  the benefits. | |
| 19    ( Plaintiff Admit ) | |
| 20  | |
| 21  36. In this case, because Plaintiff was being | 36. Ditomas Decl. 6. |
| 22  prescribed morphine, the finding of methamphetamines | |
| 23  in his body was not only a violation of his pain | Plaintiff Alleges that his |
| 24  management agreement, but also a serious risk to his | urine Sample was Contaminated |
| 25  health, that is why Plaintiff's primary care | |
| 26  physician, Dr. Francis Ko, discontinued Plaintiff's | |
| 27  morphine and Dr. Ditomas denied his Appeal. | |
| 28    Plaintiff Admit in part and deny in part | |

- 10 -

37. At no time was Dr. Ditomas ever deliberate indifferent to Plaintiffs serious Medical needs. on the Contrary, Dr. Ditomas' denial of his First Level of review was To Ensure that Plaintiff's health would not be Jeopardized.

(Plaintiff deny in part Admit in Part)

37. Ditomas Dec 1 7.

Plaintiff Alleges in the FAC That in his Appeal he requested a repeat test because the Urine Sample was Contaminated and the Procedures were Violated, (see FAC at 7, 8.)

As to Defendant Jackie Clark

| Undisputed Material Fact | Supporting Evidence |
|---|---|
| 38. At all relevant times Plaintiff was a State Prisoner incarcerated within the California Department of Corrections and Rehabilitation ("CDCR") at the California Medical Facility ("CMF") in Vacaville California. <br> (Plaintiff Admit) | 38. FAC (DOC), 24) |
| ~~a state prisoner incarcerated within~~ <br> 39. At All relevant times Jackie Clark was the Chief executive Officer at CMF. <br> (Plaintiff Admit) | 39. FAC (DOC, 24), Ex 18 p - 85 of 150 |

— 11 —

| | |
|---|---|
| 40. Plaintiff's Only Complaint against Jackie Clark is the Same as that against Dr. Ditomas - she was a Supervisor and she denied his Appeal at the Second level of review <br><br> ( Plaintiff Admit ) | 40. FAC (Doc. 24), p. 8 of 150 : Owens Depo., 43:7-24 |
| 41. Jackie Clark denied Plaintiff's Appeal at the second level of review because Plaintiff violated the terms of his Pain Management agreement entered into on April 22, 2013 <br> ( Plaintiff Admit in Part and deny in Part) | 41. FAC (Doc. 24), ¶ 18. p. 85 of 150. <br> Plaintiff Alleges in his First Amended Complaint that the Urine Sample Test Procedures were Contaminated (see FAC at p. 7, 8.) |
| As to Defendant Wendy Harris | |
| 42. At All relevant times Plaintiff was a State Prisoner incarcerated within the California department of Corrections and Rehabilitation ("CDCR") at the California Medical Facility ("CMF") in Vacaville California <br><br> ( Plaintiff Admit ) | 42. FAC (Doc) 24.) |
| 43. At All relevant times, Wendy Harris was a medical appeals Coordinator employed by CDCR at CMF in Vacaville, California, <br><br> ( Plaintiff Admit ) | 43. Harris Decl. 2. |

- 12 -

44. Plaintiff's Complaint against wendy Harris is that she Processed his Appeal as a "routine" rather than "emergency" Appeal. (Plaintiff Admit and deny in Part)

44. FAC (Doc. 24), P, 12, of 150

on to the Paint that Plaintiff also Alleges in his (FAC) that the failure to Process Plaintiff's health care Appeal as an Emergency delayed Plaintiff in receiving Medical Care (see FAC at. p. 25.)

---

45. on June 19, 2014, Plaintiff Submitted a 602 Medical Appeal (Number 14039699) and wendy Harris received it on June 21, 2014.
(Plaintiff Admit)

45. Harris Decl. 4.

---

46. wendy Harris Assigned a due date of August 8, 2014, For Appeal No. 14039699, (Plaintiff Admit)

46. Harris Decl. 4

47. Plaintiff's Appeal No. 14039699 was nd designated as an "emergency" Appeal by his health Car Provider, Dr. Ko or any Other health Care Provider. (Plaintiff Admit)

47. Harris Decl. 5.

---

48. As a Medical Appeals Coordinator, wendy Harris did Not have the Authority to designate an appeal as either "routine" or "emergency."
(Plaintiff deny)

48. Harris Decl. 6.

Plaintiff Alleges that Emergency Processing of Appeals that determination is Made by the Appeals Coordinator (See FAC at (Doc 24) p. 133 of 150, Exhibit 32.

1 49. An Appeal is designated as
2 "routine" or "emergency"
3 only by a Clinician (R.N. or
4/5 higher Licensing Level).
6 (Plaintiff deny)

49. Harris Dec. 1.

The determination of emergency Appeals
is Made by the Appeals Coordinator
(See FAC (Doc 24) p.133. Exhibit 32)

7/8 50. Wendy Harris is Not a
9 Clinician
10/11 (Plaintiff deny and Admit in Part)
12/13

50. Harris Dec. 6.

Plaintiff Admit that the defendant is
the Health Care Appeals Coordinator in Charge
For Processing health Care Appeals

14
15
16
17
18 Dated: December 11, 2017
19
20
21
22
23
24
25
26
27
28

Respectfully Submitted,
by. Plaintiff Derrick Owns
Signature, Pro Se Plaintiff

- 14 -

1  Derrick Owens, V49527
2  California, Medical, Facility
3    P.O. BOX 2000
4  Vacaville, California
5    95696.

6

7                    In the United States District Court
8              Eastern district of California, Sacramento division

9

10

11  Derrick Owens, Plaintiff,          Case No. 2 :15-CV-00982-TLN-KJN
12
13         V.
14  Jackie Clark et. al.,              Notice of Lodging of Deposition
15         Defendants,                 Transcript in Support of Opposition
16                                     To defendants Summary Judgment or,
17                                     in the Alternative, summary Adjudication
18                                     of issues.
19

20       To: Court And defendants And their Attorney of Record :

21

22     Please take Notice that the deposition transcript of Plaintiff, Derrick Owens,
23  deposed in the discovery Proceeding herein, relied upon by Plaintiff in Support of
24  his Opposition to defendants Summary Judgment, is hereby lodged as follows:
25       1. April 24, 2017 Deposition transcript of Plaintiff Derrick Owens.
26

27  Dated: December 11, 2017                         Respectfully Submitted
28
                                         signature, Derrick Owens
                                              Pro se Plaintiff

                              — 1 —

```
1              IN THE UNITED STATES DISTRICT COURT

2          FOR THE EASTERN DISTRICT OF CALIFORNIA

3                    SACRAMENTO DIVISION

4

5    DERRICK OWENS,                )

6                                  )

7            Plaintiff,            )

8                                  )

9    vs.                           ) 2:15-cv-00982 TLN KJN

10                                 )

11   JACKIE CLARK, et al.,         )

12                                 )

13           Defendants.           )

14                                 )

15

16             DEPOSITION OF DERRICK OWENS

17                 Vacaville, California

18               Monday, April 24, 2017

19                     11:03 a.m.

20

21   Reported By:

22   Danielle Reading

23   CSR No. 10826

24   Job No. CA 2578209

25   Pages 1 through 54
```

Page 1

```
 1                IN THE UNITED STATES DISTRICT COURT

 2              FOR THE EASTERN DISTRICT OF CALIFORNIA

 3                       SACRAMENTO DIVISION

 4

 5

 6     DERRICK OWENS,                    )

 7                                       )

 8              Plaintiff,               )

 9                                       )

10     vs.                              ) 2:15-cv-00982 TLN KJN

11                                       )

12     JACKIE CLARK, et al.,            )

13                                       )

14              Defendants.             )

15                                       )

16

17

18

19              Deposition of DERRICK OWENS, taken on behalf of

20     the Defendants, at the California Medical Facility, 1600

21     California Drive, Vacaville, California, beginning at

22     11:03 a.m. and ending at 12:09 p.m. on Monday, April 24,

23     2017, before Danielle Reading, Certified Shorthand

24     Reporter No. 10826.

25
```

                                                        Page 2

```
 1    A P P E A R A N C E S:

 2

 3    For the Defendants:

 4               STATE OF CALIFORNIA

 5               OFFICE OF THE ATTORNEY GENERAL

 6               BY:   OLIVER R. LEWIS,

 7                     Deputy Attorney General

 8               1300 I Street

 9               P.O. Box 944255

10               Sacramento, California  94244-2550

11               916-324-5495

12

13

14

15                        --oOo--

16

17

18

19

20

21

22

23

24

25

                                          Page 3
```

```
 1                          I N D E X

 2   WITNESS                                    EXAMINATION

 3   DERRICK OWENS

 4              By Mr. Lewis                          4

 5

 6

 7

 8                          --oOo--

 9

10

11

12                    E X H I B I T S

13   Defendants'                              Page.

14   Exhibit 1    Second Amended Notice of       17

15                Taking Deposition of

16                Plaintiff Derrick Owens and

17                Notice to Produce Documents

18                Pursuant to Code of Civil

19                Procedure Section 2025.010

20                et seq.

21

22

23

24

25                          --oOo--


                                            Page 4
```

```
 1                Vacaville, California, Monday, April 24, 2017

 2                     11:03 a.m. - 12:09 p.m.

 3

 4                          DERRICK OWENS,

 5     having been administered an oath, was examined and

 6     testified as follows:

 7

 8                          EXAMINATION

 9     BY MR. LEWIS:

10          Q    Good morning, Mr. Owens.

11          A    Good morning.

12          Q    My name is Oliver Lewis.  And we've spoken on the

13     telephone before.

14          A    Okay.

15          Q    I'm here to take your deposition today.

16               For the record, can you please state your full

17     name and spell the name as well?

18          A    Derrick Owens.

19          Q    Can you spell your name, please.

20          A    D-e-r-r-i-c-k.

21          Q    And then last name?

22          A    Owens, O-w-e-n-s.

23          Q    Okay.  Do you have a middle initial?

24          A    D.

25          Q    D.
```

Page 5

1          And what does that stand for?

2      A    Dasaun.

3      Q    Okay.  Mr. Owens, have you ever had your

4   deposition taken before?

5      A    No.

6      Q    Okay.  Let me kind of explain what the process is

7   like.

8          Basically, the purpose of the deposition today is

9   for me to kind of get a better understanding of what your

10  lawsuit is about.

11     A    Okay.

12     Q    So, basically, to assess the merits of your case.

13     A    Okay.

14     Q    There are certain ground rules that we need to

15  follow, and mostly for the court reporter's benefit.

16         Number one, wait until I finish my question

17  before you give me your answer.  Okay?

18     A    Okay.

19     Q    So that we don't both speak at the same time --

20     A    Okay.

21     Q    -- because it's very difficult for the court

22  reporter to take that down.

23     A    Okay.

24     Q    I also do not want you to guess at any of my

25  questions.  So if you are not sure about something I'm

                                                        Page 6

 1   asking you, make sure that you ask me to rephrase it.  If

 2   you don't understand it, that's fine.  There's nothing

 3   wrong with that.  Or if you don't recall, there's nothing

 4   wrong with that.

 5        A    Okay.

 6        Q    Just tell me.

 7        A    Okay.

 8        Q    I may ask you for a specific time or date.

 9   That's where the guessing comes in.  I don't want you to

10   guess.  For example, if I ask you:  What time did this

11   occur?

12             And you say, Well, I'm not sure but I'm going to

13   guess. . .

14             Okay?  I don't want you to do that.  But I am

15   entitled to an estimate.

16        A    Okay.

17        Q    Your best estimate.

18        A    Okay.

19        Q    The example I like to use is:  For example, if I

20   were to ask you the size of the table in my office in

21   Sacramento, that would be a complete guess because you've

22   never been there.

23        A    Right.

24        Q    But if I asked you for the size of this table,

25   based on your experience, you could look at it and say,

1    Well, I think it's approximately such and such.  Okay?

2    That's an estimate, and I am entitled to that.

3         Do you understand the difference between the two?

4    A    Yes.

5    Q    Okay.  As you can see, the court reporter is

6    taking everything down that you and I are going to be

7    saying today.  And within a few weeks there will be a

8    transcript that will be generated.

9    A    Okay.

10   Q    You will have an opportunity to review that

11   transcript.

12   A    Okay.

13   Q    Okay?  And you will have an opportunity to make

14   any changes to your answers that you wish.  But I should

15   forewarn you to try to give us today your best testimony

16   because if you make changes later, it might affect your

17   credibility.

18   A    Okay.

19   Q    And, you know, the obvious example is if this

20   were a car accident.  And, you know, I ask you today,

21   Well, was the light green or red?

22        And you say, The light was red.  And then you

23   read your transcript later on and you look at your

24   response and you change it to green, obviously, that

25   would affect your credibility.  Okay?

Page 8

```
1              Do you understand that?
2      A    Yes.
3      Q    Okay.  Is there any reason why this deposition
4   shouldn't go forward, such as you are not feeling well?
5              And I should ask you:  Have you taken any
6   medication today?
7      A    Yes.
8      Q    Okay.  What kind of medication have you taken
9   this morning?
10     A    Gabapentin.
11     Q    Gabapentin.
12             That's Neurontin, is it not?
13     A    Yeah.  I take it for pain.
14     Q    Okay.  Anything else?
15     A    No.  Just a heartburn medication.
16     Q    Okay.  Does the Gabapentin -- if you know, does
17  the Gabapentin affect your ability to remember or recall
18  events?
19     A    Not -- not -- not really, no.
20     Q    Okay.  And what dosage of Gabapentin did you take
21  this morning, if you know?
22     A    1600 milligrams.
23     Q    1600.  Okay.
24             Is it helping for the pain?
25     A    Yeah, so-so.
```

Page 9

```
 1        Q    So-so.  Okay.
 2        A    Yeah.
 3        Q    You have filed a lawsuit back -- well, actually,
 4    it was while ago.  But then you filed a First Amended
 5    Complaint on October 8th, 2015.
 6        A    Yes.
 7        Q    So that's the operative Complaint now.  That's
 8    the one we're dealing with.  You've sued five defendants,
 9    to my understanding.  You've sued Dr. Ko, K-o?
10        A    Yes.
11        Q    You've sued Jackie Clark?
12        A    Yes.
13        Q    You've sued Michele Ditomas?  She's a doctor.
14        A    Yes.
15        Q    You've sued a nurse by the last name of Zink?
16        A    Yes.
17        Q    And also the healthcare appeals coordinator by
18    the name of W. Harris; is that correct?
19        A    That is correct.
20        Q    Okay.  And so I'm going to be asking you
21    questions about each of those five individuals.
22        A    Okay.
23        Q    And I've read your Complaint, by the way.
24        A    Okay.
25        Q    And I've looked at the exhibits, but I kind of
```

Page 10

1    want you to explain a few things about them.

2         Let's start with Dr. Ko -- and, actually, before

3    we do this.  Let me backtrack.

4         I know you have filed a motion to compel

5    responses.

6    A    Yes.

7    Q    And having reviewed that, I do think you are

8    entitled to the first item on your Request for Production

9    of Documents.  So I have provided you here, and I'm going

10   to serve you with this on the record, with Defendant

11   Francis Ko's Supplemental Responses to Plaintiff's

12   Request for Production of Documents, Set One.  Okay?  And

13   that is -- you wanted a copy of the duty statement, I

14   believe, of Dr. Ko.  So I'm serving you with these two

15   documents.  Those are for you.  They are for your

16   records.

17   A    Okay.

18   Q    Okay.  So going back to Dr. Ko.  Now, obviously,

19   you've met with Dr. Ko several times, have you not?

20   A    What's that?

21   Q    You've met with him several times?

22   A    Yes.

23   Q    Okay.  Can you give me an approximate number of

24   times you've seen Dr. Ko for your pain?

25   A    God.

Page 11

1     Q     Again, this is where the estimate comes in.  I'm
2  not going to hold you to it.
3     A     It's been on numerous occasions.
4     Q     Okay.  Is it less than ten?
5     A     I was his patient back in 2011.  I left this
6  facility 2012.  I came back to this facility 2013.  He
7  was my provider from '13 all the way until about '16, if
8  I'm correct.
9     Q     Okay.  So from 2011 to 2012 when you were here
10 the first time, Dr. Ko was not your primary care
11 physician?
12    A     What's that?
13    Q     The first time you were here, 2011 to 2012,
14 Dr. Ko --
15    A     He was my --
16    Q     He was?
17    A     Yes, he was.
18    Q     And then you left for a year; is that correct?
19    A     Yes.
20    Q     And where did you go?
21    A     I went to another facility.
22    Q     Which one?
23    A     If I'm correct, Kern Valley, Lancaster, one of
24 those.
25    Q     Okay.

                                              Page 12

```
 1      A     It's been a while.
 2      Q     Yeah.  Okay.  And so he was -- Dr. Ko was your
 3   primary care physician from 2011 to 2012 and then again
 4   from 2013 to 2016, correct?
 5      A     Correct.
 6      Q     And he's not currently your provider, is he?
 7      A     He's no longer at this facility.
 8      Q     Oh, okay.  Okay.  Now, what is the nature of the
 9   pain that you suffer from?
10      A     Well. . .
11      Q     I mean, how did the pain first occur?
12      A     Well, back in 2007 I had an MRI done.
13      Q     Okay.
14      A     Because of neck pain reported by myself.
15      Q     Okay.
16      A     And after that MRI was taken, it was determined
17   that I had major protruding, bulging disks in my cervical
18   spine.
19      Q     Okay.
20      A     And the neurosurgeon then recommended that I have
21   surgery to give myself the best possible chance to
22   recover.
23      Q     Okay.  Did you have the surgery?
24      A     Yes.
25      Q     Okay.  And when did you have the surgery?
```

Page 13

1       A       December 19, 2007.

2       Q       Okay.  And was it -- do you know what kind of

3   surgery?  Was it a fusion or did they remove the disk?

4       A       They removed it.

5       Q       Okay.

6       A       And they also fused it.

7       Q       Okay.

8       A       Copies of that report and surgery are attached to

9   the Complaint.

10      Q       Okay.  Thank you.

11              MR. LEWIS:  By the way, I'll show you what's

12   going to be marked Exhibit 1 to your deposition.  If you

13   could take a look at this.

14   BY MR. LEWIS:

15      Q       Have you seen that document before?  That's

16   basically your Notice of Deposition for today.

17      A       Yes.

18      Q       Okay.  Can you look -- can you flip over to, I

19   believe it's Page 3 -- actually, it's Page 2.  I

20   apologize.  Page 2.

21              Do you see there's a list of documents that I've

22   requested that you produce?  There should be five or six

23   items there.  Do you see those?

24      A       Um-hum.

25      Q       Okay.  Is that a "yes"?

Page 14

```
1      A    Um-hum.

2      Q    I forgot to mention that.

3      A    Yes.

4      Q    For the court reporter, it's important that you

5    verbalize your responses because she can't take down a

6    nod of the head or an "um-hum" or "hum-um."  So make sure

7    you give me verbal responses.

8      A    Okay.

9      Q    Have you brought with you today any documents

10   that are responsive to this request in the Notice of

11   Deposition?

12     A    I don't understand.  Can you. . .

13     Q    Yeah.  If you look at the list of documents that

14   I've asked you to produce, do you see the different

15   categories?

16     A    Yes.

17     Q    Okay.  Have you brought with you any documents

18   that fit in those categories?

19     A    Well, the documents that I brought are the

20   exhibits attached to the Complaint.

21     Q    That was going to be my next question.

22     A    Right.

23     Q    So they are already -- and you filed that when

24   you filed your Complaint, correct?

25     A    Yes.
```

                                           Page 15

 1      Q     Okay.  Good.

 2      A     With the x-rays.  There's a few of those attached

 3   to the Complaint, I believe.

 4      Q     Okay.  Do you have any other documents that have

 5   to do with this case that are responsive to this request?

 6      A     Responsive?  What do you mean?

 7      Q     I mean, that fit in those categories.

 8      A     All I have now is the exhibits that are attached

 9   to this Complaint.

10      Q     Okay.  So there are no other documents that you

11   know of, correct?

12      A     There are.

13      Q     Okay.

14      A     I'm currently in the process of receiving the

15   additional medical records to get those authenticated.  I

16   could send them -- I can mail those to you.

17      Q     That would be great.  Why don't we put that on

18   the record.

19            MR. LEWIS:  So Mr. Owens just stated that the

20   documents that he has are in the process of being

21   authenticated, and that he would mail them to my office.

22            THE WITNESS:  The additional documents.

23            MR. LEWIS:  The additional documents.

24            THE WITNESS:  Right.

25            MR. LEWIS:  Additional to the exhibits to the

                                              Page 16

1    First Amended Complaint, correct?

2            THE WITNESS:  Yes.

3            MR. LEWIS:  Okay.  Great.  Let me have that back

4    for the court reporter, please.  Thank you.

5            (Exhibit 1 was marked.)

6    BY MR. LEWIS:

7      Q    Okay.  So let's go back to Dr. Ko.  Your

8    complaint with regards to Dr. Ko spans during what time

9    frame?

10     A    Say that again, please.

11     Q    Your complaint against Dr. Ko -- and I know

12   you've got a couple of complaints about him.  But what

13   time frame are we looking at?  Is that during the first

14   part -- or the first time you were here at CMF?

15     A    No.  It's dealing with the part of 2014.

16     Q    Okay.  So just the one year, 2014?

17     A    Yes.

18     Q    Can you be more specific as far as the months?

19     A    2014 April --

20     Q    Okay.

21     A    -- and May.

22     Q    April and May.  Okay.  That makes it a lot

23   easier.

24            Okay.  So why don't you tell me briefly -- and

25   once again, I've read the Complaint.  But I want you,

                                              Page 17

```
 1    from your own recollection, to tell me what your
 2    complaint against Dr. Ko was during April and May of
 3    2014.
 4        A  . Well, during April 2014 --
 5        Q    Okay.
 6        A    -- I was tested for a controlled substance --
 7        Q    Right.
 8        A    -- by a -- one of the defendants.
 9        Q    Was that R.N. Zink?
10        A    Zink, yes.
11        Q    Okay.
12        A    Where she came out and told me that I had to do
13    this test, and that the doctor had ordered it.  And at
14    first I refused.  But then she told me that if I don't do
15    the test, the doctor would cut me off my pain medication.
16        Q    Okay.  Which was what at the time?  What was the
17    pain medication?
18        A  . Morphine.  I was taking 60 milligrams a day.
19        Q    Okay.  Go ahead.  I didn't mean to cut you off.
20        A    So, yeah, the test came back positive for
21    morphine and methamphetamine.
22        Q    Had you taken the morphine that morning -- well,
23    strike that.  That was a bad question.
24             About what time of day was the test; do you
25    remember?  Was it morning?  Was it afternoon?
```

Page 18

```
 1      A    I don't remember.  I'm not sure.

 2      Q    That's fine.  That's fine.

 3           Had you taken morphine shortly before --

 4      A    Yeah, I was taking morphine 60 milligrams every

 5   day.  Once in the morning and once at night.

 6      Q    Okay.

 7      A    I was taking 30 milligrams in the morning and 30

 8   milligrams at night.

 9      Q    Had you ingested any methamphetamines?

10      A    No, not that I know of.

11      Q    Right.  Okay.

12           Then what happened?  Okay.  So you are tested --

13      A    Um --

14      Q    Let me finish my question for the court reporter.

15           You are tested by R.N. Zink.  Was it a urine

16   test?

17      A    It was a urine test, yes.

18      Q    So you are tested by R.N. Zink.  And the results

19   come back showing morphine and methamphetamines in your

20   system?

21      A    Yes.

22      Q    Okay.  Then what happens, if anything?

23      A    So I saw Dr. Ko.

24      Q    How long after that?  Do you recall?

25      A    I'm not sure how long after the test I saw
```

Page 19

1    Dr. Ko.  But I remember the date I saw Dr. Ko.  I saw him

2    on April 24th, 2014.

3        Q    Okay.  Let me write this down.  Dr. Ko. . .

4        A    His --

5        Q    Okay.  Go ahead.

6        A    His, I think, primary update for that date is

7    attached to the exhibits as Exhibit 14 to the Complaint.

8        Q    Okay.  And what does that say -- well, let me ask

9    you -- it says what it says.  I can look at it later.

10            But what did Dr. Ko tell you on the day he saw

11    you, on April 14 [sic], 2014?

12        A    Well, Dr. Ko explained that the test showed

13    methamphetamine.  It was a pain contract violation.  And,

14    initially, I had to sign this contract to receive opioid

15    medication.  So he told me that he was going to have to

16    taper me off the morphine --

17        Q    Okay.

18        A    -- at that time.  You know?

19        Q    Was that because of the methamphetamines?

20        A    Yes.

21        Q    Okay.

22        A    At that time I explained to him that -- give me

23    one second.

24        Q    Yeah, yeah.  Go ahead.

25        A    Okay.  At that time I explained to Dr. Ko that I

Page 20

```
 1    did not do methamphetamine.  I explained to him that the

 2    way the test was conducted was a clear violation of the

 3    policy of the institution.

 4        Q    Okay.

 5        A    He replied and said, well, he still had to cut me

 6    off that medication, morphine, due to whatever policy at

 7    the institution.

 8        Q    Okay.

 9        A    I then requested an alternative, you know,

10    something that wasn't narcotic.  He refused.  And he just

11    started to taper me off the medication morphine.

12             May 14th, 2014 -- 2014 the morphine was

13    completely cut.

14        Q    Okay.  What date was that, I'm sorry, again?

15        A    May 14th, 2014.

16        Q    Okay.  So about a month later?

17        A    Let me back up.  April 24th Dr. Ko started

18    cutting the morphine.

19        Q    Okay.  So it wasn't on April 14th.  It was

20    April 24th?

21        A    April 24th he started cutting the morphine.

22        Q    Okay.

23        A    May 14th, 2014, the morphine --

24        Q    Was cut off?

25        A    -- completely was cut off.
```

                                                        Page 21

1      Q    Okay.  During that time period from April 24th,

2  2014, to May 14, 2014, when the morphine was completely

3  cut off, did you take any other pain medication?

4      A    No.  He wouldn't give me anything at that time.

5      Q    Not even over-the-counter Ibuprofen?  Anything?

6      A    No, sir.  No, sir.

7      Q    Okay.

8      A    As a matter of fact, on April 24th, 2014, because

9  I knew that he was going to start to taper me off the

10  morphine, I requested, you know, the alternative.  Hey,

11  will you give me something else?

12      Q    Right.

13      A    I don't want to just be left in pain.  A simple

14  Tylenol would have been better than to just go without

15  anything.  And he refused me, man.

16      Q    Did he tell you why?

17      A    No.  He just seemed a little upset.  Like that.

18  You know, because I had been taking morphine for quite a

19  while.  For several years, depending on his medication.

20  And he just seemed upset.  He became kind of cruel even.

21      Q    In what way?

22      A    Just hurrying me out of his office.  Saying that

23  I shouldn't have violated the pain contract.  And that I

24  could just get up and go, basically.

25      Q    Okay.

Page 22

1      A    So, yes, again, on May 14, 2014, the medication

2    morphine was completely stopped.  And I was basically

3    just left, you know, with nothing.

4      Q    Okay.

5      A    And I didn't realize, you know, that he was

6    violating my rights by, you know, not giving me nothing.

7           So I then put in a request to see him again, a

8    sick call for him.

9      Q    And do you remember the date of that,

10   approximate?

11     A    It's attached to the Complaint.

12     Q    Okay.

13     A    I think it's at exhibit -- give me one second,

14   sir.

15     Q    Sure.

16     A    Exhibit 20 attached to the Complaint.

17     Q    Okay.  So you then requested to see him again?

18     A    I needed to see him.  I wrote specifically on

19   the --

20     Q    Was it a healthcare request?

21     A    It's a 7362 medical request.

22     Q    Right.

23     A    Which was on June 2nd, 2014.

24     Q    Okay.

25     A    I put, "I need to see my primary care provider

Page 23

1    concerning medications."

2        Q    Okay.  Let me stop you right there.  From

3    May 14th of 2014, when the morphine was completely cut

4    off, until you put in the request on June 2nd, 2014, were

5    you taking any kind of pain medication?

6        A    I wasn't taking anything.

7        Q    Okay.

8        A    Actually, I spoke to a few of the medication

9    nurses that work on the housing unit and I told them,

10   like, Hey, I'm not getting anything.  The doctor weaned

11   me off morphine that I was taking for chronic back pain,

12   neck pain, sciatic nerve pain in my leg.

13            And they told me to, you know, give them a

14   chance.  They'll go refer what I'm saying to the doctor.

15       Q    Right.

16       A    And, you know, several times they never got back

17   to me.  And I was furious.  And I was in my cell in pain.

18   And I put the sick call slip in on June. . .

19       Q    Did you actually see Dr. Ko again after you put

20   in the request on the June 2nd?

21       A    Yes.

22       Q    Okay.  How long after the June 2nd request do you

23   recall?  And, again, you don't have to give me the exact

24   date.  Just approximate number of days.

25       A    I put the request in on June 2nd, 2014.  And I

                                              Page 24

```
 1    saw Dr. Ko, I believe, on June 16th, 2014.  So it took 16
 2    days.
 3        Q    Two weeks?
 4        A    Yes.
 5        Q    And do you recall that visit with Dr. Ko?
 6        A    What's that?
 7        Q    Do you recall that visit with Dr. Ko on
 8    June 16th?
 9        A    Clearly.
10        Q    Okay.  And what happened during that visit?
11        A    I spoke to Dr. Ko about my medications.  Told him
12    I was, you know, going through pain.  And, you know,
13    that's something that he knew.  I believe he diagnosed
14    me.  He knew that I had past surgery, chronic neck pain.
15    And I told him that I needed something.
16             And this guy he just was really, like, mad.  He
17    seemed like he was upset with me.  I don't know if that
18    was because this pain contract was violated, maybe that
19    made him look bad to his supervisors.  But he refused me.
20    And he rushed me out of his office.
21        Q    Just like the previous time?
22        A    Just like the previous time.
23        Q    Okay.
24        A    I got his copy of his progress notes, which I
25    believe is attached to this Complaint.
```

Page 25

```
 1      Q      Okay.  I can take a look at that later.  Okay.

 2             So, basically, you tell him that you need some

 3      kind of alternative pain medication.  He doesn't

 4      prescribe anything, and kind of rushes you out of his

 5      office?

 6      A      Rushed me out of his office.

 7      Q      Okay.  Did you ever see Dr. Ko again after that

 8      visit for the same thing?

 9      A      Yes.

10      Q      Okay.  How long after that, approximately?

11      A      Well, after that I put in a grievance.

12      Q      Okay.

13      A      A 602.

14      Q      A 602.  Okay.

15      A      Requesting emergency processing.

16      Q      Okay.

17      A      Well, let me back up.  Let me back up.

18             I put in a -- okay.  Correct.  I put in a 602

19      grievance.  And this was on June 19th, 2014.  It was

20      maybe two or three days after I had saw Dr. Ko.

21      Q      You said June 18th or 19th?

22      A      June 19th.

23      Q      Okay.  Go ahead.  Actually, let me ask you one

24      question before we go on.

25             Had you filed a 602 prior to June 19th of 2014?
```

Page 26

| | | |
|---|---|---|
| 1 | A | No, because I wanted to see him first. |
| 2 | Q | Right. That makes sense. Okay. Okay. So go |

3    ahead. So you file a 602 on June 19th.

4          Then what happens, if anything?

5    A    Well, let me say this.

6    Q    Yeah.

7    A    I didn't file the 602 grievance before the

8    June 16th -- the June 16, 2014, meeting with Dr. Ko

9    because I wanted to see him and give him an opportunity

10    to maybe give me something. You know?

11          So when he didn't give me anything, that's when I

12    filed the 602, sir.

13    Q    Okay. And so what happened after you filed the

14    602?

15    A    After I filed the 602 requesting emergency

16    processing from our appeals coordinator for medical, the

17    602 was processed as a routine.

18          I requested the emergency processing because I

19    was in a lot of pain. I was going through it. My

20    neck -- when it gets cold at night, I have crooks in my

21    neck. It's hard to lay on one side.

22          That appeal was processed as a routine.

23    Q    How do you know that? I'm just curious.

24    A    Well. . .

25    Q    Well, first of all, let me ask you this.

Page 27

1           Do you have a copy of your 602 attached to your

2    Complaint?

3        A    Yes.

4        Q    Okay.  And so how do you know that it was

5    processed as a routine 602?

6        A    Give me one second.

7        Q    Sure.

8        A    Can you repeat your question?

9        Q    Sure.

10           How do you know that the 602 that you filed on

11   June 19th, 2014, was processed as a routine 602 as

12   opposed to the emergency process that you requested?

13       A    Well, California Code of Regulations, they

14   require a 602 medical grievance to be processed within

15   five days, I believe, if the inmate states the proper

16   standards for emergency processing.  I wish I would have

17   brought a Title 15 with me.

18       Q    Oh, that's fine.  I can look it up.

19       A    ·If the inmate is in, like, chronic pain --

20       Q    Okay.

21       A    -- or something is, like, threatening his life.

22       Q    So are you saying that you are supposed to be

23   seen within five days after that?

24       A    Within five days.

25       Q    And you were not?

Page 28

1     A     I was seen -- I want to give you exact dates.

2     Okay.  I have it here.

3           Can you repeat the question, please?

4     Q     Sure.

5           My question was:  How do you know that your 602

6     was processed as a routine 602 as opposed to the

7     emergency process that you requested?

8           And I think you mentioned something about you

9     were supposed to be seen within five days.

10    A     Right.  Five, seven days.  It's pretty quick, if

11    you have, like, a chronic illness.

12    Q     Right.  And so when were you seen after that?

13    A     I was -- I wasn't seen until, I believe -- for

14    the 602?

15    Q     Yes.

16    A     July 24th, 2014.  So it was over a month.

17    Q     During that month were you seen by any other

18    healthcare providers?

19    A     No.

20    Q     Okay.

21    A     Only nurses.

22    Q     Okay.  And, of course, the nurses were not

23    allowed to prescribe anything?

24    A     They weren't allowed to prescribe.

25    Q     Okay.  So you still -- as of July 24th, 2014, you

Page 29

```
 1    still don't have any pain medication, correct?
 2        A    As of when?
 3        Q    July 24th, '14, when you were seen for the 602 --
 4        A    Right.
 5        Q    -- you still hadn't been taking anything?
 6        A    I still hadn't been taking anything.
 7        Q    Okay.  And I believe, if I remember correctly,
 8    the 602 was denied at the first level; is that correct?
 9        A    No, it was granted at the first level.
10        Q    It was granted?
11        A    Yes.
12        Q    Okay.  And do you know who did that?
13        A    I believe it was the Defendant Michele Ditomas.
14        Q    Okay.  And was she a chief physician at the time?
15        A    I believe a copy of the first-level response is
16    attached --
17        Q    Okay.
18        A    -- at exhibit -- no, let me back up.
19             I believe my medication was granted at the first
20    and second level.
21        Q    Okay.
22        A    The Defendant Jackie Clark granted me medication
23    also at the second level.  And that's attached here to
24    the First Amended Complaint as Exhibit 26.
25        Q    Okay.  So let me make sure I understand this.
```

Page 30

```
 1              Your 602 was granted at the first level --

 2      A    Um-hum.

 3      Q    -- by Michele Ditomas.

 4      A    I appealed to the second level also.

 5      Q    Why did you appeal, if it was granted?

 6      A    The doctor -- well, the Defendant Francis Ko had

 7   violated the 8th Amendment right to medical care, refused

 8   me medication on several occasions.

 9              I also didn't feel that my morphine should have

10   ever been taken due to the violation of the procedures --

11      Q    Okay.

12      A    -- of the. . .

13      Q    Let me ask you this.  After your 602 was granted

14   at the first level by Dr. Ditomas, how soon after that

15   did you start receiving any kind of pain medication?

16      A    After what now?

17      Q    After the first level was granted, how soon after

18   that did you receive pain medication?

19      A    I believe I received medication either that

20   night, on July 24, 2014, or the next morning.

21      Q    Okay.  And what kind of medication?

22      A    I believe he prescribed Ibuprofen 400 milligrams.

23      Q    This was Dr. Ko?

24      A    Yes.

25      Q    Okay.
```

                                                    Page 31

1      A     And Nortriptyline 25 milligrams.

2      Q     What was the other one?

3      A     I can spell it.

4      Q     Sure.

5      A     N-o-r-t-r-i-p-t-y-l-i-n-e.  Twenty-five

6    milligrams.

7      Q     And both of those medications were for the pain,

8    correct?

9      A     Yes.

10     Q     Okay.  Did those two medications help with the

11   pain?

12     A     Very, very slight.

13     Q     Okay.  Okay.  So then you appealed it to the

14   second level.

15     A     Yes.

16     Q     And that's where Jackie Clark comes in.  And it's

17   also granted, correct?

18     A     The medication, yes.

19     Q     The same medication?

20     A     Yes.  Yes.

21     Q     Okay.  So during that time frame you are

22   continuing to receive the Ibuprofen and the

23   Nortriptyline?

24     A     Yes.

25     Q     Twenty-five milligrams.  Okay.

Page 32

```
1              And what happened after the second level?  You
2     appealed it to the third level?
3        A    I appealed it to the third level.
4        Q    And what happened there?
5        A    I have that third-level response attached hereto.
6        Q    Okay.  What's the exhibit number?
7        A    I need a second to go through it and find it.
8        Q    Sure.
9              Do you recall if it was granted?
10       A    Yes.  I have that exhibit attached to the
11    Complaint, I believe, at Exhibit 30.
12       Q    Okay.  Let me take a quick look at that.  Okay.
13    So it says that the appeal is denied, correct?
14       A    Where are you reading?
15       Q    Where it says, "Director's-level decision."
16       A    Yes.
17       Q    It says, "Appeal is denied.  This decision
18    exhausts your administrative remedies."
19       A    Right.
20       Q    Okay.  Okay.  Anything else about Dr. Ko other
21    than what you've told me, as far as your Complaints
22    against him, which is, essentially, that he did not give
23    you -- strike that.
24             Essentially, I think what you've stated, both in
25    your Complaint and today in your testimony, is that
```

Page 33

```
 1    because there was a finding that there was a violation of
 2    your pain contract with CCR, that he started tapering you
 3    off the morphine without giving you any alternate
 4    medications for pain; is that correct?
 5        A    Right.
 6        Q    Anything else about Dr. Ko that you complain of?
 7        A    Yes.  Give me one second.  There's something else
 8    I wanted to tell you.
 9        Q    Sure.
10        A    Yes.  The 602 that was filed against Dr. Ko for
11    his failure to provide me with some pain medication --
12        Q    Is that the one that was filed on June 19, 2014?
13        A    Yes.
14        Q    Okay.
15        A    -- this appeal was accepted at the first-level
16    review, assigned to Dr. Ko, which he received --
17        Q    Okay.
18        A    -- on June 27th, 2014.
19             Now, down to the bottom of Exhibit 21 --
20        Q    Okay.  What is the complaint there?
21        A    Well, I received his, I believe it was,
22    admissions.  I don't have that on hand right now, but I
23    do have it back in my room.
24        Q    Okay.
25        A    Dr. Ko, I believe, in his admissions stated that
```

Page 34

1     he didn't know that I was in pain or that I didn't

2     know -- that he didn't know that I wanted anything.  And

3     he received this 602 on June 27th, 2014.  I saw Dr. Ko on

4     July 22nd, 2014.

5        Q     So about a month after?

6        A     Yes.

7        Q     Okay.

8        A     And I think he was aware -- well, I believe he

9     was aware due to the fact that he signed off on this 602.

10       Q     Okay.

11       A     And this is the same 602 appeal that I requested

12    emergency processing because I was in chronic pain.

13       Q     Right.  Okay.

14             So you think, basically, Dr. Ko was aware of the

15    pain you were going through --

16       A     Absolutely.

17       Q     -- and still didn't give you any medications?

18       A     Absolutely.

19       Q     Okay.  Do you think -- and this is probably

20    speculation on both of our parts.  But do you think it's

21    possible that his hands were tied and that he could not

22    prescribe anything else because of the pain contract

23    violation?

24       A     Not at all.  I believe there's always an

25    alternative.

Page 35

1      Q     Okay.

2      A     Especially when you are dealing with people that

3    are in pain, chronic pain, or people with cancer.

4      Q     Okay.  Anything else about Dr. Ko?  I want to

5    move on to the other defendants very briefly.

6      A     No, not right now.

7      Q     Okay.  Let's move on to R.N. Zink.  And I'm going

8    to tell you what I think is your complaint.  And you

9    correct me if I'm wrong.

10          I believe I saw in your Complaint that your

11   complaint against R.N. Zink was that she was the nurse --

12   by the way, was it a he or a she?

13     A     A she.

14     Q     You don't happen to know her first name, do you?

15     A     Teresa Zink.

16     Q     Teresa.  Okay.  Okay.

17          So your complaint about nurse Teresa Zink is that

18   she was the one who administered the urine test, correct?

19     A     Yes, she collected the urine sample.

20     Q     She collected the urine sample.  Okay.  And I

21   believe your complaint was twofold.  Number one, that she

22   was not -- you were not supposed to have a female collect

23   the urine sample; is that correct?

24     A     Yes.

25     Q     Okay.  And then, number two, that she was not

                                              Page 36

1    wearing gloves when she --

2        A    Yes.

3        Q    Let me finish my question, for the record.

4             That she was not wearing gloves when she

5    collected the urine sample; is that correct?

6        A    Yes.

7        Q    Can you describe for me how that event went

8    about?  So, in other words, she approaches you --

9        A    Yes.

10       Q    -- and says I need a urine sample from you?

11       A    Yes.

12       Q    Okay.  And so then what?  You go into the

13   restroom?

14       A    Well, can I back up for a second?

15       Q    Sure.

16       A    I was called to B-1 medical clinic.

17       Q    Okay.

18       A    That's where the inmates go when we are waiting

19   for our appointments to see the doctor for that day.

20       Q    Okay.

21       A    She came out and she told me that she needed to

22   collect a urine sample from me, random.

23       Q    Okay.

24       A    She said if I didn't provide a urine sample, the

25   doctor would cut me off my medication for pain.

Page 37

1    Q    Okay.  Did she say who ordered her to do that?

2    A    Dr. Ko.

3    Q    Dr. Ko did?

4    A    Yes.

5    Q    Okay.  Go ahead.

6    A    So she -- she told me that I had to go into this

7    restroom.  You know, it's an inmate restroom --

8    Q    Right.

9    A    -- where we all use, and provide this urine

10   sample for her.

11        I wasn't provided any gloves.  She wasn't wearing

12   any gloves.

13        I go into the restroom and I'm trying to shield

14   myself, and she is watching me.  And she -- it was a

15   total disaster.

16   Q    Okay.  So I want to make sure I understand this,

17   without going into too much detail.

18        But you had your back to her at that point?

19   A    No.

20   Q    You don't?  Okay.

21   A    I tried to shield myself.

22   Q    Okay.

23   A    But she told me that she had to watch the urine

24   going into the bottle.

25   Q    Okay.  Okay.  So then that happens, I assume?

Page 38

1        A      Yes.

2        Q      How far away from you is she at that point?

3        A      She's about two feet --

4        Q      Okay.

5        A      -- two and a half feet.

6        Q      Okay.  So you do your thing.  You put the urine

7    in a cup, I assume, correct?

8        A      A little container.

9        Q      Okay.  And then there is a lid to that?

10       A      I'm not even sure.

11       Q      Okay.  So you didn't put a lid back on?

12       A      No.

13       Q      Okay.  And so when you're done, do you hand it to

14   her?

15       A      I hand it to her, yes.

16       Q      Okay.  Do you recall if she put a lid on it?

17       A      You know, it's been so long ago. . .

18       Q      I know.

19       A      This was 2014.

20       Q      I know.

21       A      I know she's supposed to put a lid.

22       Q      That's why I told you earlier, I don't want you

23   to guess.  If you don't know, you don't know.  That's

24   fine.

25       A      Okay.

Page 39

```
 1      Q    But in any event, you give her the urine sample

 2   in the cup.  And then what happens?

 3           Does she leave at that point?

 4      A    Yes.

 5      Q    Okay.  So other than what we've discussed about

 6   R.N. Zink, is there anything else in your complaints

 7   against her?

 8      A    Yes.

 9      Q    Okay.

10      A    You know, for the record, you know, they have a

11   policy here per DOM Section 52010.17/52010.18.  "Staff

12   Requirements/Urine Sample Collection."  And one of the

13   requirements are that "Staff observing the collection of

14   the urine sample shall be of the same gender as the

15   inmate being tested."

16      Q    Right.  I saw that in your Complaint.  Did you

17   tell her that at the time?

18      A    I -- I think I mentioned it.  I didn't have the

19   DOM on me that day.  So I don't know if I gave that to

20   her or said it in these exact words.

21      Q    Right.

22      A    I'm reading directly from Exhibit 33 of the

23   Complaint.

24      Q    Okay.

25      A    But I did tell her that, you know, Aren't
```

Page 40

1    males -- isn't this a custody issue?  Male R.N.s.

2            And she just kind of smirked and said, If you

3    don't do this, you know, the doctor is going to cut you

4    off your medication for pain.  So I was kind of forced to

5    do this.

6        Q    Okay.  Okay.

7            So the no gloves is your complaint?

8        A    No gloves.

9        Q    And then also the gender problem, that it should

10   have been a male nurse actually collecting --

11       A    A male staff member, custody.

12       Q    Or a male staff member, correct.

13       A    Another thing was the environment, the restroom

14   environment, was very, you know, not clean.  A little

15   dirty.  It's an inmate restroom where we run in and out

16   of.

17       Q    Yeah.

18       A    And one of the requirements when you are

19   collecting the urine sample for drug testing -- give me

20   one second.  It specifically states, "Staff will adhere

21   to the following during the collection of the urine

22   sample:  The sample collection shall be conducted in a

23   sanitary setting and with the necessary universal

24   precautions.  The inmate shall be provided disposable

25   gloves for use during the collection and access to clean

Page 41

1    running water after the collection is completed."

2         None of this was done during that time.

3    Q    Is it -- is it your belief that that's -- that's

4    a bad question.  Strike that.

5         Do you believe that the fact that, as you said,

6    none of this was done, that that contributed to your

7    having methamphetamines in your system?

8    A    Well, I remember her hands being inside the

9    bottle before she handed it to me.

10   Q    Okay.

11   A    I don't know if she put a lid on it after.  I

12   don't remember exactly what happened.  But I do remember,

13   you know, she wasn't wearing gloves.  I was not provided

14   gloves.  Her hands was touching the inside of the

15   container when she handed it to me.

16   Q    Okay.  And you think that might have contributed

17   to it -- contributed to the finding of methamphetamines

18   in your system?

19   A    Again, the area which I was put to provide it was

20   dirty.  It's a hot spot for drug use.  Inmates. . .

21   Q    Right.

22   A    So I don't know if I may have touched something.

23   I'm just not sure.

24   Q    I understand.  I understand.

25   A    I've given several tests since then and they've

Page 42

1    all been clean.  But I've been in a lab setting.  They

2    won't send me back to the B-1 medical clinic.  I think

3    they changed that.

4         Q     Okay.  Okay.  Good.

5               Let's move on to Jackie Clark.

6         A     Okay.

7         Q     Now, tell me again who Jackie Clark was at the

8    time.

9         A     Jackie Clark is the -- then she was the chief

10   executive officer.

11        Q     Okay.  And what is your complaint against Jackie

12   Clark?

13        A     Well, Jackie Clark, she knew that the urine

14   collection procedure was violated by the Defendant Teresa

15   Zink.  I appealed to her and requested that my medication

16   be reinstated for those reasons, and maybe that a repeat

17   test could be done properly.

18              That was never done and the appeal was denied.

19        Q     Okay.

20        A     I feel that Jackie Clark was, you know, the

21   supervisor that knew of this, and that's why she was

22   added to this suit.

23        Q     Okay.  Anything else about Jackie Clark?

24        A     Not at this time.

25        Q     Okay.  What about W. Harris?  I don't know what

Page 43

```
 1    the first name is.  Oh, she was the healthcare --
 2    A     When --
 3    Q     Excuse me.
 4          She was the healthcare appeals coordinator?
 5    A     Yes.
 6    Q     So what is the complaint against her?
 7    A     Give me one second.
 8    Q     Sure.
 9    A     In the Complaint, yes, I filed a 602 medical
10    appeal to Jackie Clark who was the healthcare appeals
11    coordinator.
12    Q     No.  I'm sorry.  Let me correct you.  You just
13    stated that Jackie Clark was the chief executive officer.
14          Are you talking about W. Harris?
15    A     Excuse me.  Yes.
16    Q     Okay.  W. Harris.
17    A     I filed the medical healthcare appeal --
18    Q     Is that still the same one that we talked about
19    earlier, the one that was filed in June of 2014, or is
20    that a different one?
21    A     That's the same one.
22    Q     Okay.
23    A     The Defendant Wendy Harris was the medical
24    appeals coordinator.
25    Q     Okay.
```

Page 44

1     A    And I requested emergency processing due to pain
2  issues again.
3     Q    So that goes back to your complaint that it was
4  processed as a routine?
5     A    It was processed as a routine.  And I
6  specifically stated that I had consulted with my primary
7  care provider about pain, and he refused me anything.
8     Q    Okay.
9     A    Could somebody please provide some treatment for
10  me?
11    Q    Okay.
12    A    This appeal was processed as a routine, which
13  delayed me, like, over a month to receive some treatment
14  for my chronic pain.
15    Q    Okay.  Anything else about Wendy Harris?
16    A    Well, yeah.  The California Code of Regulations
17  Title 15, Section 3084.9 [sic] (A)(1), (B) and (2),
18  requires medical appeals to be processed as an emergency
19  if there is a serious and imminent danger to the inmate's
20  health.
21    Q    Okay.
22    A    I did submit the appeal, which I gave a clear
23  description of the circumstances warranting emergency
24  processing, and that is attached to this Complaint as
25  Exhibit 21.

Page 45

```
 1            I explained that I was in chronic pain.  And that
 2     the Defendant Francis Ko refused and failed to provide me
 3     any medical care.
 4       Q    Okay.  Did you -- did you ever receive a response
 5     from Wendy Harris after you filed your 602?  Did she
 6     personally ever respond to you?
 7       A    No.
 8       Q    Okay.
 9       A    The first thing I got was a due date for, like,
10     sometime in July.
11       Q    To see Dr. Ko?
12       A    Yes.
13       Q    Okay.  Let's go to Dr. Michele Ditomas.  She's
14     the fifth one.  What is your complaint against her?
15       A    Similar to the complaint against the Defendant
16     Jackie Clark.
17       Q    Okay.
18       A    Her supervisor liability.
19            The Defendant Michele Ditomas knew of the lack of
20     treatment that I was getting, as far as medication for
21     pain and the violation of the urine sample collection.
22            I requested morphine reinstated due to the urine
23     sample collection violation --
24       Q    Okay.
25       A    -- which was denied.
```

Page 46

1      Q      Did you ever receive morphine after that for your

2  pain?

3      A      No.

4      Q      You never did?

5      A      No.

6      Q      Okay.  After you -- you told me that at some

7  point, which I believe it was July of 2014, you started

8  receiving Ibuprofen and Nortriptyline.

9      A      Wait a second.  What did you say?

10     Q      After you began receiving medication on

11  July 24th, 2014, which you said you were receiving

12  Ibuprofen 400 milligrams and then Nortriptyline 25

13  milligrams --

14     A      Right.

15     Q      -- did you continue receiving medication up to

16  the present?

17     A      Yes.

18     Q      Okay.

19     A      Yes.

20     Q      Did that medication change at any point?

21     A      Yes.

22     Q      Okay.  And was that to the Gabapentin?

23     A      Yes.

24     Q      Okay.  Did you receive any other types of

25  medication besides the Ibuprofen, the Nortriptyline, or

Page 47

1    the Gabapentin?

2       A    Yes.  I've been on quite a few medications since

3    then.

4       Q    Okay.

5       A    And I've been working -- my current provider has

6    been working with me to see what medications that will

7    work best for me.

8       Q    Okay.

9       A    He's also sent me to a pain committee twice in a

10   discussion to possibly get me cut back on the morphine.

11      Q    Who is your current provider?

12      A    Dr. Petras.

13      Q    Do you know how to spell that?

14      A    P-e-t-r-a-s.

15      Q    Petras.  Okay.  Great.

16           Now, out of those five defendants -- we talked

17   about Dr. Ko.  We talked about R.N. Zink.

18      A    Yes.

19      Q    We talked about Jackie Clark.  We talked about

20   Wendy Harris.  And we talked about Dr. Ditomas.

21           -- the only two you have ever met is Dr. Ko and

22   R.N. Zink; is that correct?

23      A    Yes.

24      Q    You never met Jackie Clark?

25      A    No.

                                              Page 48

1      Q    Never met Wendy Harris?

2      A    No.

3      Q    And never went -- excuse me.

4           And never met Michele Ditomas?

5      A    No.

6      Q    Okay.  Let me just take a quick look here.

7           Do you have an expected release date?

8      A    Yes.

9      Q    Which is when?

10     A    Around 2022.

11     Q    Okay.  What was your current crime of commitment?

12     A    Do I have to answer that?

13     Q    Well, for purposes of a deposition, yeah.  You

14   may not think it's relevant, but you do have to answer

15   it.  It doesn't mean it comes in at trial or anything.

16     A    I had a robbery conviction.

17     Q    Okay.  What year was that in?

18     A    20- -- early 2000s.

19     Q    Okay.  Let me just make sure.  I think I'm almost

20   done.

21           When was the last time you saw Dr. Ko; do you

22   recall?  Approximately.  I know you mentioned earlier it

23   was 2016.

24     A    Yeah, maybe a year.  A little bit over a year

25   ago.

Page 49

1      Q     Okay.  Was it for the same problem?  For the

2   pain?  I mean, for the pain associated with your sciatic

3   nerve and neck?

4      A     Every time I saw Dr. Ko I've always spoken to him

5   about my pain, like, on every visit.

6      Q     Okay.

7      A     There hasn't ever been a visit where we didn't

8   speak about my pain issues.

9      Q     Okay.  After he prescribed those two medications,

10  the Ibuprofen and the Nortriptyline, did he always agree

11  to refill those?

12     A     Dr. Ko?

13     Q     Yeah.  In other words, he never denied a refill

14  for either one of those two medications that you know of,

15  do you?

16     A     I'm not -- I'm not -- I don't remember exactly.

17  It's been a while.

18     Q     Okay.

19     A     It's been a long time.

20     Q     Okay.  Okay.  Is there anything else you want to

21  tell me about any of these five defendants, and I'm

22  talking complaint-wise.

23     A     Just the fact that, you know, I was kind of

24  tortured by the doctor.  Like I say, I feel like, you

25  know, just because you may be mad at me or a little

Page 50

1    upset, it doesn't give a doctor the right to become

2    cruel.

3            And, you know, reading the law has taught me a

4    lot, you know, about my rights.

5        Q    Right.

6        A    And, you know, even if, you know -- if it was

7    true that a pain contract is violated, you know, there

8    has to be an alternative.  Especially when you know that

9    I'm in pain.

10       Q    Right.

11       A    If you know that I suffer.

12            If Dr. Ko never knew, I wouldn't say a word.

13   Because how could he be liable?

14       Q    Right.

15       A    But this guy, he knew the prognosis.  He knew

16   it's an ongoing thing.  I've been diagnosed with, like,

17   spinal stenosis and chronic pain.  I'm always in pain.

18   It never goes away.  I'm in pain right now.

19       Q    I was going to ask you that.  We've been sitting

20   here for about over an hour.

21       A    Yeah.  You know, the medication I'm receiving

22   right now, you know, it helps me somewhat.  It's better

23   than nothing.

24       Q    Right.  Right.  Okay.

25            MR. LEWIS:  That's all I've got.

                                              Page 51

```
1              So, once again, if you don't mind sending me
2     those records once you have them, after they are
3     authenticated.
4              THE WITNESS:  Okay.  And what are all the records
5     that you need?
6              MR. LEWIS:  Whatever is responsive to the notice.
7              THE WITNESS:  Okay.
8              MR. LEWIS:  And you should have the notice
9     because you received a copy of it.
10             THE WITNESS:  Okay.  Okay.
11             MR. LEWIS:  So whatever is responsive to that, if
12    you think there's anything else, other than what is
13    attached to your Complaint.
14             THE WITNESS:  Okay.
15             MR. LEWIS:  Okay.  Great.  I think we're done.
16    Thank you.  Thank you, Mr. Owens.
17             THE WITNESS:  Thank you, sir.
18             (The deposition concluded at 12:09 p.m.)
19
20
21
22
23
24
25
```

Page 52

```
 1           I, DERRICK OWENS, do hereby declare under penalty
 2      of perjury that I have read the foregoing transcript;
 3      that I have made any corrections as appear noted, in ink,
 4      initialed by me, or attached hereto; that my testimony as
 5      contained herein, as corrected, is true and correct.
 6             EXECUTED this      day of            ,
 7      20   , at                  ,                      .
 8                   (City)              (State)
 9
10
11
12
13                              DERRICK OWENS
14
15
16
17
18
19
20
21
22
23
24
25
```

Page 53

1         I, the undersigned, a Certified Shorthand

2    Reporter of the State of California, do hereby certify:

3         That the foregoing proceedings were taken before

4    me at the time and place herein set forth; that any

5    witnesses in the foregoing proceedings; prior to

6    testifying, were duly sworn; that a record of the

7    proceedings was made by me using machine shorthand which

8    was thereafter transcribed under my direction; that the

9    foregoing transcript is a true record of the testimony

10   given.

11        Further, that if the foregoing pertains to the

12   original transcript of a deposition in a Federal Case,

13   before completion of the proceedings, review of the

14   transcript [  ] was [  ] was not requested.

15        I further certify I am neither financially

16   interested in the action nor a relative or employee of

17   any attorney or party to this action.

18        IN WITNESS WHEREOF, I have this date

19   subscribed my name.

20   Dated:  May 4, 2017

21

22

23

24

25         DANIELLE READING CSR NO. 10826

Page 54

[00982 - approximately]

| 0 | | 5 | admissions 34:22 |
|---|---|---|---|
| **00982** 1:9 2:10 | 21:12,12,15,23 | | 34:25 |
| **1** | 22:2,2,8 23:1,23 | **52010.17/52010...** | **affect** 8:16,25 9:17 |
| | 24:3,4,25 25:1 | 40:11 | **afternoon** 18:25 |
| **1** 1:25 4:14 14:12 | 26:19,25 27:8 | **54** 1:25 | **ago** 10:4 39:17 |
| 17:5 37:16 43:2 | 28:11 29:16,25 | **6** | 49:25 |
| 45:17 | 31:20 34:12,18 | **60** 18:18 19:4 | **agree** 50:10 |
| **10826** 1:23 2:24 | 35:3,4 39:19 | **602** 26:13,14,18,25 | **ahead** 18:19 20:5 |
| 54:25 | 44:19 47:7,11 | 27:3,7,12,14,15,17 | 20:24 26:23 27:3 |
| **11:03** 1:19 2:22 | **2015** 10:5 | 28:1,5,10,11,14 | 38:5 |
| 5:2 | **2016** 13:4 49:23 | 29:5,6,14 30:3,8 | **al** 1:11 2:12 |
| **12:09** 2:22 5:2 | **2017** 1:18 2:23 5:1 | 31:1,13 34:10 | **allowed** 29:23,24 |
| 52:18 | 54:20 | 35:3,9,11 44:9 | **alternate** 34:3 |
| **13** 12:7 | **2022** 49:10 | 46:5 | **alternative** 21:9 |
| **1300** 3:8 | **2025.010** 4:19 | **7** | 22:10 26:3 35:25 |
| **14** 20:7,11 22:2 | **21** 34:19 45:25 | **7362** 23:21 | 51:8 |
| 23:1 30:3 | **22nd** 35:4 | **8** | **amended** 4:14 |
| **14th** 21:12,15,19 | **24** 1:18 2:22 5:1 | **8th** 10:5 31:7 | 10:4 17:1 30:24 |
| 21:23 24:3 | 31:20 | **9** | **amendment** 31:7 |
| **15** 28:17 45:17 | **24th** 20:2 21:17,20 | **916-324-5495** 3:11 | **answer** 6:17 49:12 |
| **16** 12:7 25:1 27:8 | 21:21 22:1,8 | **94244-2550** 3:10 | 49:14 |
| **1600** 2:20 9:22,23 | 29:16,25 30:3 | **944255** 3:9 | **answers** 8:14 |
| **16th** 25:1,8 27:8 | 47:11 | **a** | **apologize** 14:20 |
| **17** 4:14 | **25** 32:1 47:12 | **a.m.** 1:19 2:22 5:2 | **appeal** 27:22 31:5 |
| **18th** 26:21 | **2578209** 1:24 | **ability** 9:17 | 33:13,17 34:15 |
| **19** 14:1 34:12 | **26** 30:24 | **absolutely** 35:16 | 35:11 43:18 44:10 |
| **19th** 26:19,21,22 | **27th** 34:18 35:3 | 35:18 | 44:17 45:12,22 |
| 26:25 27:3 28:11 | **2:15** 1:9 2:10 | **accepted** 34:15 | **appealed** 31:4 |
| **2** | **2nd** 23:23 24:4,20 | **access** 41:25 | 32:13 33:2,3 |
| **2** 14:19,20 45:17 | 24:22,25 | **accident** 8:20 | 43:15 |
| **20** 23:16 49:18 | **3** | **action** 54:16,17 | **appeals** 10:17 |
| 53:7 | **3** 14:19 | **added** 43:22 | 27:16 44:4,10,24 |
| **2000s** 49:18 | **30** 19:7,7 33:11 | **additional** 16:15 | 45:18 |
| **2007** 13:12 14:1 | **3084.9** 45:17 | 16:22,23,25 | **appear** 53:3 |
| **2011** 12:5,9,13 | **33** 40:22 | **adhere** 41:20 | **appointments** |
| 13:3 | **4** | **administered** 5:5 | 37:19 |
| **2012** 12:6,9,13 | **4** 4:4 54:20 | 36:18 | **approaches** 37:8 |
| 13:3 | **400** 31:22 47:12 | **administrative** | **approximate** |
| **2013** 12:6 13:4 | | 33:18 | 11:23 23:10 24:24 |
| **2014** 17:15,16,19 | | | **approximately** 8:1 |
| 18:3,4 20:2,11 | | | 26:10 49:22 |

[april - contained]

**april** 1:18 2:22 5:1 17:19,22 18:2,4 20:2,11 21:17,19 21:20,21 22:1,8
**area** 42:19
**asked** 7:24 15:14
**asking** 7:1 10:20
**assess** 6:12
**assigned** 34:16
**associated** 50:2
**assume** 38:25 39:7
**attached** 14:8 15:20 16:2,8 20:7 23:11,16 25:25 28:1 30:16,23 33:5,10 45:24 52:13 53:4
**attorney** 3:5,7 54:17
**authenticated** 16:15,21 52:3
**aware** 35:8,9,14

**b**

**b** 4:12 37:16 43:2 45:17
**back** 10:3 11:18 12:5,6 13:12 17:3 17:7 18:20 19:19 21:17 24:11,16 26:17,17 30:18 34:23 37:14 38:18 39:11 43:2 45:3 48:10
**backtrack** 11:3
**bad** 18:23 25:19 42:4
**based** 7:25
**basically** 6:8,12 14:16 22:24 23:2 26:2 35:14

**began** 47:10
**beginning** 2:21
**behalf** 2:19
**belief** 42:3
**believe** 11:14 14:19 16:3 25:1 25:13,25 28:15 29:13 30:7,13,15 30:19 31:19,22 33:11 34:21,25 35:8,24 36:10,21 42:5 47:7
**benefit** 6:15
**best** 7:17 8:15 13:21 48:7
**better** 6:9 22:14 51:22
**bit** 49:24
**bottle** 38:24 42:9
**bottom** 34:19
**box** 3:9
**briefly** 17:24 36:5
**brought** 15:9,17 15:19 28:17
**bulging** 13:17

**c**

**c** 3:1 5:20
**ca** 1:24
**california** 1:2,17 2:2,20,21,21 3:4 3:10 5:1 28:13 45:16 54:2
**call** 23:8 24:18
**called** 37:16
**cancer** 36:3
**car** 8:20
**care** 12:10 13:3 23:25 31:7 45:7 46:3
**case** 6:12 16:5 54:12

**categories** 15:15 15:18 16:7
**ccr** 34:2
**cell** 24:17
**certain** 6:14
**certified** 2:23 54:1
**certify** 54:2,15
**cervical** 13:17
**chance** 13:21 24:14
**change** 8:24 47:20
**changed** 43:3
**changes** 8:14,16
**chief** 30:14 43:9 44:13
**chronic** 24:11 25:14 28:19 29:11 35:12 36:3 45:14 46:1 51:17
**circumstances** 45:23
**city** 53:8
**civil** 4:18
**clark** 1:11 2:12 10:11 30:22 32:16 43:5,7,9,12,13,20 43:23 44:10,13 46:16 48:19,24
**clean** 41:14,25 43:1
**clear** 21:2 45:22
**clearly** 25:9
**clinic** 37:16 43:2
**cmf** 17:14
**code** 4:18 28:13 45:16
**cold** 27:20
**collect** 36:22 37:22
**collected** 36:19,20 37:5

**collecting** 41:10 41:19
**collection** 40:12 40:13 41:21,22,25 42:1 43:14 46:21 46:23
**come** 19:19
**comes** 7:9 12:1 32:16 49:15
**commitment** 49:11
**committee** 48:9
**compel** 11:4
**complain** 34:6
**complaint** 10:5,7 10:23 14:9 15:20 15:24 16:3,9 17:1 17:8,11,25 18:2 20:7 23:11,16 25:25 28:2 30:24 33:11,25 34:20 36:8,10,11,17,21 40:16,23 41:7 43:11 44:6,9 45:3 45:24 46:14,15 50:22 52:13
**complaints** 17:12 33:21 40:6
**complete** 7:21
**completed** 42:1
**completely** 21:13 21:25 22:2 23:2 24:3
**completion** 54:13
**concerning** 24:1
**concluded** 52:18
**conducted** 21:2 41:22
**consulted** 45:6
**contained** 53:5

[container - either]

container 39:8
42:15
continue 47:15
continuing 32:22
contract 20:13,14
22:23 25:18 34:2
35:22 51:7
contributed 42:6
42:16,17
controlled 18:6
conviction 49:16
coordinator 10:17
27:16 44:4,11,24
copies 14:8
copy 11:13 25:24
28:1 30:15 52:9
correct 10:18,19
12:8,18,23 13:4,5
15:24 16:11 17:1
26:18 30:1,8 32:8
32:17 33:13 34:4
36:9,18,23 37:5
39:7 41:12 44:12
48:22 53:5
corrected 53:5
corrections 53:3
correctly 30:7
counter 22:5
couple 17:12
course 29:22
court 1:1 2:1 6:15
6:21 8:5 15:4 17:4
19:14
credibility 8:17,25
crime 49:11
crooks 27:20
cruel 22:20 51:2
csr 1:23 54:25
cup 39:7 40:2
curious 27:23

current 48:5,11
49:11
currently 13:6
16:14
custody 41:1,11
cut 18:15,19 21:5
21:13,24,25 22:3
24:3 37:25 41:3
48:10
cutting 21:18,21
cv 1:9 2:10

d

d 4:1 5:20,24,25
danger 45:19
danielle 1:22 2:23
54:25
dasaun 6:2
date 7:8 20:1,6
21:14 23:9 24:24
46:9 49:7 54:18
dated 54:20
dates 29:1
day 18:18,24 19:5
20:10 37:19 40:19
53:6
days 24:24 25:2
26:20 28:15,23,24
29:9,10
dealing 10:8 17:15
36:2
december 14:1
decision 33:15,17
declare 53:1
defendant 11:10
30:13,22 31:6
43:14 44:23 46:2
46:15,19
defendants 1:13
2:14,20 3:3 4:13
10:8 18:8 36:5
48:16 50:21

delayed 45:13
denied 30:8 33:13
33:17 43:18 46:25
50:13
depending 22:19
deposition 1:16
2:19 4:15 5:15 6:4
6:8 9:3 14:12,16
15:11 49:13 52:18
54:12
deputy 3:7
derrick 1:5,16 2:6
2:19 4:3,16 5:4,18
53:1,13
describe 37:7
description 45:23
detail 38:17
determined 13:16
diagnosed 25:13
51:16
difference 8:3
different 15:14
44:20
difficult 6:21
direction 54:8
directly 40:22
director's 33:15
dirty 41:15 42:20
disaster 38:15
discussed 40:5
discussion 48:10
disk 14:3
disks 13:17
disposable 41:24
district 1:1,2 2:1,2
ditomas 10:13
30:13 31:3,14
46:13,19 48:20
49:4
division 1:3 2:3

doctor 10:13
18:13,15 24:10,14
31:6 37:19,25
41:3 50:24 51:1
document 14:15
documents 4:17
11:9,12,15 14:21
15:9,13,17,19 16:4
16:10,20,22,23
dom 40:11,19
dosage 9:20
dr 10:9 11:2,14,18
11:19,24 12:10,14
13:2 17:7,8,11
18:2 19:23 20:1,1
20:3,10,12,25
21:17 24:19 25:1
25:5,7,11 26:7,20
27:8 31:14,23
33:20 34:6,10,16
34:25 35:3,14
36:4 38:2,3 46:11
46:13 48:12,17,20
48:21 49:21 50:4
50:12 51:12
drive 2:21
drug 41:19 42:20
due 21:6 31:10
35:9 45:1 46:9,22
duly 54:6
duty 11:13

e

e 3:1,1 4:1,12 5:20
5:22 32:5 48:14
earlier 39:22
44:19 49:22
early 49:18
easier 17:23
eastern 1:2 2:2
either 31:19 50:14

[emergency - half]

| | | | |
|---|---|---|---|
| emergency 26:15 27:15,18 28:12,16 29:7 35:12 45:1 45:18,23 | expected 49:7 experience 7:25 explain 6:6 11:1 explained 20:12 20:22,25 21:1 46:1 | 44:1 46:9 fit 15:18 16:7 five 10:8,21 14:22 28:15,23,24 29:9 29:10 32:5,25 48:16 50:21 | 35:17 40:1 41:19 44:7 51:1 given 42:25 54:10 giving 23:6 34:3 gloves 37:1,4 38:11,12 41:7,8,25 42:13,14 |
| employee 54:16 entitled 7:15 8:2 11:8 | **f** | flip 14:18 follow 6:15 | go 9:4 12:20 17:7 18:19 20:5,24 |
| environment 41:13,14 especially 36:2 51:8 | facility 2:20 12:6,6 12:21 13:7 fact 22:8 35:9 42:5 50:23 | following 41:21 follows 5:6 forced 41:4 foregoing 53:2 | 22:14,24 24:14 26:23,24 27:2 33:7 37:12,18 38:5,6,13 46:13 |
| essentially 33:22 33:24 | failed 46:2 failure 34:11 | 54:3,5,9,11 forewarn 8:15 | god 11:25 goes 45:3 51:18 |
| estimate 7:15,17 8:2 12:1 | far 17:18 33:21 39:2 46:20 | forgot 15:2 forth 54:4 | going 7:12 8:6 10:20 11:9,18 |
| et 1:11 2:12 4:20 event 37:7 40:1 events 9:18 | federal 54:12 feel 31:9 43:20 50:24 | forward 9:4 frame 17:9,13 32:21 | 12:2 14:12 15:21 20:15 22:9 25:12 27:19 35:15 36:7 |
| exact 24:23 29:1 40:20 | feeling 9:4 feet 39:3,5 | francis 11:11 31:6 46:2 | 38:17,24 41:3 51:19 |
| exactly 42:12 50:16 | female 36:22 fifth 46:14 | full 5:16 furious 24:17 | good 5:10,11 16:1 43:4 |
| examination 4:2 5:8 | file 27:3,7 filed 10:3,4 11:4 | further 54:11,15 fused 14:6 | granted 30:9,10 30:19,22 31:1,5,13 |
| examined 5:5 example 7:10,19 7:19 8:19 | 15:23,24 26:25 27:12,13,15 28:10 34:10,12 44:9,17 | fusion 14:3 **g** | 31:17 32:17 33:9 great 16:17 17:3 48:15 52:15 |
| excuse 44:3,15 49:3 | 44:19 46:5 financially 54:15 | gabapentin 9:10 9:11,16,17,20 | green 8:21,24 grievance 26:11 |
| executed 53:6 executive 43:10 44:13 | find 33:7 finding 34:1 42:17 | 47:22 48:1 gender 40:14 41:9 general 3:5,7 | 26:19 27:7 28:14 ground 6:14 |
| exhausts 33:18 exhibit 4:14 14:12 17:5 20:7 23:13 | fine 7:2 19:2,2 28:18 39:24 finish 6:16 19:14 | generated 8:8 getting 24:10 46:20 | guess 6:24 7:10,13 7:21 39:23 guessing 7:9 |
| 23:16 30:18,24 33:6,10,11 34:19 40:22 45:25 | 37:3 first 10:4 11:8 12:10,13 13:11 | give 6:17 8:15 11:23 13:21 15:7 20:22 22:4,11 | guy 25:16 51:15 **h** |
| exhibits 10:25 15:20 16:8,25 20:7 | 17:1,13,14 18:14 27:1,25 30:8,9,15 30:19,24 31:1,14 31:17 34:15 36:14 | 23:13 24:13,23 27:9,10,11 28:6 29:1 33:22 34:7 | h 4:12 half 39:5 |

Veritext Legal Solutions
866 299-5127

[hand - lot]

**hand** 34:22 39:13
    39:15
**handed** 42:9,15
**hands** 35:21 42:8
    42:14
**happen** 36:14
**happened** 19:12
    25:10 27:13 33:1
    33:4 42:12
**happens** 19:22
    27:4 38:25 40:2
**hard** 27:21
**harris** 10:18 43:25
    44:14,16,23 45:15
    46:5 48:20 49:1
**head** 15:6
**health** 45:20
**healthcare** 10:17
    23:20 29:18 44:1
    44:4,10,17
**heartburn** 9:15
**help** 32:10
**helping** 9:24
**helps** 51:22
**hereto** 33:5 53:4
**hey** 22:10 24:10
**hold** 12:2
**hot** 42:20
**hour** 51:20
**housing** 24:9
**hum** 14:24 15:1,6
    15:6 31:2
**hurrying** 22:22

**i**

**ibuprofen** 22:5
    31:22 32:22 47:8
    47:12,25 50:10
**illness** 29:11
**imminent** 45:19
**important** 15:4

**individuals** 10:21
**ingested** 19:9
**initial** 5:23
**initialed** 53:4
**initially** 20:14
**ink** 53:3
**inmate** 28:15,19
    38:7 40:15 41:15
    41:24
**inmate's** 45:19
**inmates** 37:18
    42:20
**inside** 42:8,14
**institution** 21:3,7
**interested** 54:16
**issue** 41:1
**issues** 45:2 50:8
**item** 11:8
**items** 14:23

**j**

**jackie** 1:11 2:12
    10:11 30:22 32:16
    43:5,7,9,11,13,20
    43:23 44:10,13
    46:16 48:19,24
**job** 1:24
**july** 29:16,25 30:3
    31:20 35:4 46:10
    47:7,11
**june** 23:23 24:4,18
    24:20,22,25 25:1,8
    26:19,21,22,25
    27:3,8,8 28:11
    34:12,18 35:3
    44:19

**k**

**k** 5:20 10:9
**kern** 12:23
**kind** 6:6,9 9:8
    10:25 14:2 22:20

24:5 26:3,4 31:15
    31:21 41:2,4
    50:23
**kjn** 1:9 2:10
**knew** 22:9 25:13
    25:14 43:13,21
    46:19 51:12,15,15
**know** 8:19,20 9:16
    9:21 11:4 14:2
    16:11 17:11 19:10
    20:18 21:9 22:10
    22:18 23:3,5,6
    24:13,16 25:12,12
    25:17 27:10,23
    28:4,10 29:5
    30:12 35:1,2,2
    36:14 38:7 39:17
    39:18,20,21,23,23
    40:10,10,19,25
    41:3,14 42:11,13
    42:22 43:20,25
    48:13 49:22 50:14
    50:23,25 51:3,4,6
    51:6,7,8,11,21,22
**ko** 10:9 11:2,14,18
    11:19,24 12:10,14
    13:2 17:7,8,11
    18:2 19:23 20:1,1
    20:3,10,12,25
    21:17 24:19 25:1
    25:5,7,11 26:7,20
    27:8 31:6,23
    33:20 34:6,10,16
    34:25 35:3,14
    36:4 38:2,3 46:2
    46:11 48:17,21
    49:21 50:4,12
    51:12
**ko's** 11:11

**l**

**l** 32:5
**lab** 43:1
**lack** 46:19
**lancaster** 12:23
**law** 51:3
**lawsuit** 6:10 10:3
**lay** 27:21
**leave** 40:3
**left** 12:5,18 22:13
    23:3
**leg** 24:12
**level** 30:8,9,15,20
    30:23 31:1,4,14,17
    32:14 33:1,2,3,5
    33:15 34:15
**lewis** 3:6 4:4 5:9
    5:12 14:11,14
    16:19,23,25 17:3,6
    51:25 52:6,8,11,15
**liability** 46:18
**liable** 51:13
**lid** 39:9,11,16,21
    42:11
**life** 28:21
**light** 8:21,22
**list** 14:21 15:13
**little** 22:17 39:8
    41:14 49:24 50:25
**long** 19:24,25
    24:22 26:10 39:17
    50:19
**longer** 13:7
**look** 7:25 8:23
    14:13,18 15:13
    20:9 25:19 26:1
    28:18 33:12 49:6
**looked** 10:25
**looking** 17:13
**lot** 17:22 27:19
    51:4

Page 5

[machine - okay]

| m | methamphetamine | nature  13:8 | o |
|---|---|---|---|
| machine  54:7 | 18:21 20:13 21:1 | necessary  41:23 | o  5:22 10:9 32:5 |
| mad  25:16 50:25 | methamphetami... | neck  13:14 24:12 | oath  5:5 |
| mail  16:16,21 | 19:9,19 20:19 | 25:14 27:20,21 | observing  40:13 |
| major  13:17 | 42:7,17 | 50:3 | obvious  8:19 |
| male  41:1,10,11 | michele  10:13 | need  6:14 23:25 | obviously  8:24 |
| 41:12 | 30:13 31:3 46:13 | 26:2 33:7 37:10 | 11:18 |
| males  41:1 | 46:19 49:4 | 52:5 | occasions  12:3 |
| man  22:15 | middle  5:23 | needed  23:18 | 31:8 |
| marked  14:12 | milligrams  9:22 | 25:15 37:21 | occur  7:11 13:11 |
| 17:5 | 18:18 19:4,7,8 | neither  54:15 | october  10:5 |
| matter  22:8 | 31:22 32:1,6,25 | nerve  24:12 50:3 | office  3:5 7:20 |
| mean  13:11 16:6,7 | 47:12,13 | neurontin  9:12 | 16:21 22:22 25:20 |
| 18:19 49:15 50:2 | mind  52:1 | neurosurgeon | 26:5,6 |
| medical  2:20 | monday  1:18 2:22 | 13:20 | officer  43:10 |
| 16:15 23:21 27:16 | 5:1 | never  7:22 24:16 | 44:13 |
| 28:14 31:7 37:16 | month  21:16 | 43:18 47:4 48:24 | oh  13:8 28:18 44:1 |
| 43:2 44:9,17,23 | 29:16,17 35:5 | 49:1,3,4 50:13 | okay  5:14,23 6:3,6 |
| 45:18 46:3 | 45:13 | 51:12,18 | 6:11,13,17,18,20 |
| medication  9:6,8 | months  17:18 | night  19:5,8 27:20 | 6:23 7:5,7,14,16 |
| 9:15 18:15,17 | morning  5:10,11 | 31:20 | 7:18 8:1,5,9,12,13 |
| 20:15 21:6,11 | 9:9,21 18:22,25 | nod  15:6 | 8:18,25 9:3,8,14 |
| 22:3,19 23:1 24:5 | 19:5,7 31:20 | nortriptyline  32:1 | 9:16,20,23 10:1,20 |
| 24:8 26:3 30:1,19 | morphine  18:18 | 32:23 47:8,12,25 | 10:22,24 11:12,17 |
| 30:22 31:8,15,18 | 18:21,22 19:3,4,19 | 50:10 | 11:18,23 12:4,9,25 |
| 31:19,21 32:18,19 | 20:16 21:6,11,12 | noted  53:3 | 13:2,8,8,13,15,19 |
| 34:11 37:25 41:4 | 21:18,21,23 22:2 | notes  25:24 | 13:23,25 14:2,5,7 |
| 43:15 46:20 47:10 | 22:10,18 23:2 | notice  4:14,17 | 14:10,18,25 15:8 |
| 47:15,20,25 51:21 | 24:3,11 31:9 34:3 | 14:16 15:10 52:6 | 15:17 16:1,4,10,13 |
| medications  24:1 | 46:22 47:1 48:10 | 52:8 | 17:3,7,16,20,22,24 |
| 25:11 32:7,10 | motion  11:4 | number  6:16 | 18:5,11,16,19 19:6 |
| 34:4 35:17 48:2,6 | move  36:5,7 43:5 | 11:23 24:24 33:6 | 19:11,12,22 20:3,5 |
| 50:9,14 | mri  13:12,16 | 36:21,25 | 20:8,17,21,25 21:4 |
| meeting  27:8 | n | numerous  12:3 | 21:8,14,16,19,22 |
| member  41:11,12 | n  3:1 4:1 5:22 32:5 | nurse  10:15 36:11 | 22:1,7,25 23:4,12 |
| mention  15:2 | 32:5 | 36:17 41:10 | 23:17,24 24:2,7,22 |
| mentioned  29:8 | name  5:12,17,17 | nurses  24:9 29:21 | 25:10,23 26:1,1,7 |
| 40:18 49:22 | 5:19,21 10:15,18 | 29:22 | 26:10,12,14,16,18 |
| merits  6:12 | 36:14 44:1 54:19 | | 26:23 27:2,2,13 |
| met  11:19,21 | narcotic  21:10 | | 28:4,20 29:2,20,22 |
| 48:21,24 49:1,4 | | | 29:25 30:7,12,14 |

[okay - r.n.s.]

30:17,21,25 31:11
31:21,25 32:10,13
32:13,21,25 33:6
33:12,12,20,20
34:14,17,20,24
35:7,10,13,19 36:1
36:4,7,16,16,20,25
37:12,17,20,23
38:1,5,16,20,22,25
38:25 39:4,6,9,11
39:13,16,25 40:5,9
40:24 41:6,6
42:10,16 43:4,4,6
43:11,19,23,25
44:16,22,25 45:8
45:11,15,21 46:4,8
46:13,17,24 47:6
47:18,22,24 48:4,8
48:15 49:6,11,17
49:19 50:1,6,9,18
50:20,20 51:24
52:4,7,10,10,14,15
oliver  3:6 5:12
once  17:25 19:5,5
52:1,2
ongoing  51:16
ooo  3:15 4:8,25
operative  10:7
opioid  20:14
opportunity  8:10
8:13 27:9
opposed  28:12
29:6
ordered  18:13
38:1
original  54:12
owens  1:5,16 2:6
2:19 4:3,16 5:4,10
5:18,22 6:3 16:19
52:16 53:1,13

**p**

p  3:1,1 32:5 48:14
p.m.  2:22 5:2
52:18
p.o.  3:9
page  4:13 14:19,19
14:20
pages  1:25
pain  9:13,24 11:24
13:9,11,14 18:15
18:17 20:13 22:3
22:13,23 24:5,11
24:12,12,17 25:12
25:14,18 26:3
27:19 28:19 30:1
31:15,18 32:7,11
34:2,4,11 35:1,12
35:15,22 36:3,3
37:25 41:4 45:1,7
45:14 46:1,21
47:2 48:9 50:2,2,5
50:8 51:7,9,17,17
51:18
part  17:14,15
parts  35:20
party  54:17
patient  12:5
penalty  53:1
people  36:2,3
period  22:1
perjury  53:2
personally  46:6
pertains  54:11
petras  48:12,15
physician  12:11
13:3 30:14
place  54:4
plaintiff  1:7 2:8
4:16
plaintiff's  11:11

please  5:16,19
17:4,10 29:3 45:9
point  38:18 39:2
40:3 47:7,20
policy  21:3,6
40:11
positive  18:20
possible  13:21
35:21
possibly  48:10
precautions  41:24
prescribe  26:4
29:23,24 35:22
prescribed  31:22
50:9
present  47:16
pretty  29:10
previous  25:21,22
primary  12:10
13:3 20:6 23:25
45:6
prior  26:25 54:5
probably  35:19
problem  41:9 50:1
procedure  4:19
43:14
procedures  31:10
proceedings  54:3
54:5,7,13
process  6:6 16:14
16:20 28:12 29:7
processed  27:17
27:22 28:5,11,14
29:6 45:4,5,12,18
processing  26:15
27:16,18 28:16
35:12 45:1,24
produce  4:17
14:22 15:14
production  11:8
11:12

prognosis  51:15
progress  25:24
proper  28:15
properly  43:17
protruding  13:17
provide  34:11
37:24 38:9 42:19
45:9 46:2
provided  11:9
38:11 41:24 42:13
provider  12:7 13:6
23:25 45:7 48:5
48:11
providers  29:18
purpose  6:8
purposes  49:13
pursuant  4:18
put  16:17 23:7,25
24:4,18,19,25
26:11,18,18 39:6
39:11,16,21 42:11
42:19

**q**

question  6:16
15:21 18:23 19:14
26:24 28:8 29:3,5
37:3 42:4
questions  6:25
10:21
quick  29:10 33:12
49:6
quite  22:18 48:2

**r**

r  3:1,6 5:20,20
32:5,5 48:14
r.n.  18:9 19:15,18
36:7,11 40:6
48:17,22
r.n.s.  41:1

[random - shield]

| | | | |
|---|---|---|---|
| **random** 37:22 | **regulations** 28:13 | **respond** 46:6 | 37:24 38:10 40:1 |
| **rays** 16:2 | 45:16 | **response** 8:24 | 40:12,14 41:19,22 |
| **read** 8:23 10:23 | **reinstated** 43:16 | 30:15 33:5 46:4 | 41:22 46:21,23 |
| 17:25 53:2 | 46:22 | **responses** 11:5,11 | **sanitary** 41:23 |
| **reading** 1:22 2:23 | **relative** 54:16 | 15:5,7 | **saw** 19:23,25 20:1 |
| 33:14 40:22 51:3 | **release** 49:7 | **responsive** 15:10 | 20:1,10 25:1 |
| 54:25 | **relevant** 49:14 | 16:5,6 52:6,11 | 26:20 35:3 36:10 |
| **realize** 23:5 | **remedies** 33:18 | **restroom** 37:13 | 40:16 49:21 50:4 |
| **really** 9:19 25:16 | **remember** 9:17 | 38:7,7,13 41:13,15 | **saying** 8:7 22:22 |
| **reason** 9:3 | 18:25 19:1 20:1 | **results** 19:18 | 24:14 28:22 |
| **reasons** 43:16 | 23:9 30:7 42:8,12 | **review** 8:10 34:16 | **says** 20:9,9 33:13 |
| **recall** 7:3 9:17 | 42:12 50:16 | 54:13 | 33:15,17 37:10 |
| 19:24 24:23 25:5 | **remove** 14:3 | **reviewed** 11:7 | **sciatic** 24:12 50:2 |
| 25:7 33:9 39:16 | **removed** 14:4 | **right** 7:23 15:22 | **second** 4:14 20:23 |
| 49:22 | **repeat** 28:8 29:3 | 16:24 18:7 19:11 | 23:13 28:6 30:20 |
| **receive** 20:14 | 43:16 | 22:12 23:22 24:2 | 30:23 31:4 32:14 |
| 31:18 32:22 45:13 | **rephrase** 7:1 | 24:15 27:2 29:10 | 33:1,7 34:7 37:14 |
| 46:4 47:1,24 | **replied** 21:5 | 29:12 30:4 31:7 | 41:20 44:7 47:9 |
| **received** 31:19 | **report** 14:8 | 33:19 34:5,22 | **section** 4:19 40:11 |
| 34:16,21 35:3 | **reported** 1:21 | 35:13 36:6 38:8 | 45:17 |
| 52:9 | 13:14 | 40:16,21 42:21 | **see** 8:5 14:21,23 |
| **receiving** 16:14 | **reporter** 2:24 6:22 | 47:14 51:1,5,10,14 | 15:14 23:7,17,18 |
| 31:15 47:8,10,11 | 8:5 15:4 17:4 | 51:18,22,24,24 | 23:25 24:19 26:7 |
| 47:15 51:21 | 19:14 54:2 | **rights** 23:6 51:4 | 27:1,9 37:19 |
| **recollection** 18:1 | **reporter's** 6:15 | **robbery** 49:16 | 46:11 48:6 |
| **recommended** | **request** 11:8,12 | **room** 34:23 | **seen** 11:24 14:15 |
| 13:20 | 15:10 16:5 23:7 | **routine** 27:17,22 | 28:23 29:1,9,12,13 |
| **record** 5:16 11:10 | 23:20,21 24:4,20 | 28:5,11 29:6 45:4 | 29:17 30:3 |
| 16:18 37:3 40:10 | 24:22,25 | 45:5,12 | **send** 16:16 43:2 |
| 54:6,9 | **requested** 14:22 | **rules** 6:14 | **sending** 52:1 |
| **records** 11:16 | 21:9 22:10 23:17 | **run** 41:15 | **sense** 27:2 |
| 16:15 52:2,4 | 27:18 28:12 29:7 | **running** 42:1 | **sent** 48:9 |
| **recover** 13:22 | 35:11 43:15 45:1 | **rushed** 25:20 26:6 | **seq** 4:20 |
| **red** 8:21,22 | 46:22 54:14 | **rushes** 26:4 | **serious** 45:19 |
| **refer** 24:14 | **requesting** 26:15 | | **serve** 11:10 |
| **refill** 50:11,13 | 27:15 | **s** | **serving** 11:14 |
| **refused** 18:14 | **require** 28:14 | **s** 3:1 4:12 5:22 | **set** 11:12 54:4 |
| 21:10 22:15 25:19 | **requirements** | 48:14 | **setting** 41:23 43:1 |
| 31:7 45:7 46:2 | 40:12,13 41:18 | **sacramento** 1:3 | **seven** 29:10 |
| **regards** 17:8 | **requires** 45:18 | 2:3 3:10 7:21 | **shield** 38:13,21 |
| | | **sample** 36:19,20 | |
| | | 36:23 37:5,10,22 | |

[shorthand - touched]

shorthand 2:23 54:1,7
shortly 19:3
show 14:11
showed 20:12
showing 19:19
sic 20:11 45:17
sick 23:8 24:18
side 27:21
sign 20:14
signature 54:24
signed 35:9
similar 46:15
simple 22:13
sir 22:6,6 23:14 27:12 52:17
sitting 51:19
six 14:22
size 7:20,24
slight 32:12
slip 24:18
smirked 41:2
somebody 45:9
somewhat 51:22
soon 31:14,17
sorry 21:14 44:12
spans 17:8
speak 6:19 50:8
specific 7:8 17:18
specifically 23:18 41:20 45:6
speculation 35:20
spell 5:17,19 32:3 48:13
spinal 51:17
spine 13:18
spoke 24:8 25:11
spoken 5:12 50:4
spot 42:20
staff 40:11,13 41:11,12,20

stand 6:1
standards 28:16
start 11:2 22:9 31:15
started 21:11,17 21:21 34:2 47:7
state 3:4 5:16 53:8 54:2
stated 16:19 33:24 34:25 44:13 45:6
statement 11:13
states 1:1 2:1 28:15 41:20
stenosis 51:17
stop 24:2
stopped 23:2
street 3:8
strike 18:23 33:23 42:4
submit 45:22
subscribed 54:19
substance 18:6
sued 10:8,9,11,13 10:15
suffer 13:9 51:11
suit 43:22
supervisor 43:21 46:18
supervisors 25:19
supplemental 11:11
supposed 28:22 29:9 36:22 39:21
sure 6:25 7:1,12 15:6 19:1,25 23:15 28:7,9 29:4 30:25 32:4 33:8 34:9 37:15 38:16 39:10 42:23 44:8 49:19

surgery 13:21,23 13:25 14:3,8 25:14
sworn 54:6
system 19:20 42:7 42:18

**t**

t 4:12 32:5,5 48:14
table 7:20,24
take 5:15 6:22 9:13,20 14:13 15:5 22:3 26:1 33:12 49:6
taken 2:19 6:4 9:5 9:8 13:16 18:22 19:3 31:10 54:3
talked 44:18 48:16 48:17,19,19,20
talking 44:14 50:22
taper 20:16 21:11 22:9
tapering 34:2
taught 51:3
telephone 5:13
tell 7:6 17:24 18:1 20:10 22:16 26:2 34:8 36:8 40:17 40:25 43:7 50:21
ten 12:4
teresa 36:15,16,17 43:14
test 18:13,15,20,24 19:16,17,25 20:12 21:2 36:18 43:17
tested 18:6 19:12 19:15,18 40:15
testified 5:6
testifying 54:6
testimony 8:15 33:25 53:4 54:9

testing 41:19
tests 42:25
thank 14:10 17:4 52:16,16,17
thing 26:8 39:6 41:13 46:9 51:16
things 11:1
think 8:1 11:7 20:6 23:13 29:8 33:24 35:8,14,19 35:20 36:8 40:18 42:16 43:2 49:14 49:19 52:12,15
third 33:2,3,5
threatening 28:21
three 26:20
tied 35:21
time 6:19 7:8,10 12:10,13 17:8,13 17:14 18:16,24 20:18,22,25 22:1,4 25:21,22 30:14 32:21 40:17 42:2 43:8,24 49:21 50:4,19 54:4
times 11:19,21,24 24:16
title 28:17 45:17
tln 1:9 2:10
today 5:15 6:8 8:7 8:15,20 9:6 14:16 15:9 33:25
told 18:12,14 20:15 24:9,13 25:11,15 33:21 37:21 38:6,23 39:22 47:6
tortured 50:24
total 38:15
touched 42:22

[touching - zink]

**touching** 42:14
**transcribed** 54:8
**transcript** 8:8,11
  8:23 53:2 54:9,12
  54:14
**treatment** 45:9,13
  46:20
**trial** 49:15
**tried** 38:21
**true** 51:7 53:5
  54:9
**try** 8:15
**trying** 38:13
**twenty** 32:5,25
**twice** 48:9
**two** 8:3 11:14 25:3
  26:20 32:10 36:25
  39:3,5 48:21 50:9
  50:14
**twofold** 36:21
**tylenol** 22:14
**types** 47:24

**u**

**um** 14:24 15:1,6,6
  19:13 31:2
**undersigned** 54:1
**understand** 7:2
  8:3 9:1 15:12
  30:25 38:16 42:24
  42:24
**understanding** 6:9
  10:9
**unit** 24:9
**united** 1:1 2:1
**universal** 41:23
**update** 20:6
**upset** 22:17,20
  25:17 51:1
**urine** 19:15,17
  36:18,19,20,23
  37:5,10,22,24 38:9

38:23 39:6 40:1
  40:12,14 41:19,21
  43:13 46:21,22
**use** 7:19 38:9
  41:25 42:20

**v**

**vacaville** 1:17 2:21
  5:1
**valley** 12:23
**verbal** 15:7
**verbalize** 15:5
**violated** 22:23
  25:18 31:7 43:14
  51:7
**violating** 23:6
**violation** 20:13
  21:2 31:10 34:1
  35:23 46:21,23
**visit** 25:5,7,10
  26:8 50:5,7
**vs** 1:9 2:10

**w**

**w** 5:22 10:18
  43:25 44:14,16
**wait** 6:16 47:9
**waiting** 37:18
**want** 6:24 7:9,14
  11:1 17:25 22:13
  29:1 36:4 38:16
  39:22 50:20
**wanted** 11:13 27:1
  27:9 34:8 35:2
**warranting** 45:23
**watch** 38:23
**watching** 38:14
**water** 42:1
**way** 10:23 12:7
  14:11 21:2 22:21
  36:12

**we've** 5:12 40:5
  51:19
**weaned** 24:10
**wearing** 37:1,4
  38:11 42:13
**weeks** 8:7 25:3
**wendy** 44:23
  45:15 46:5 48:20
  49:1
**went** 12:21 37:7
  49:3
**whereof** 54:18
**wise** 50:22
**wish** 8:14 28:16
**witness** 4:2 16:22
  16:24 17:2 52:4,7
  52:10,14,17 54:18
**witnesses** 54:5
**word** 51:12
**words** 37:8 40:20
  50:13
**work** 24:9 48:7
**working** 48:5,6
**write** 20:3
**wrong** 7:3,4 36:9
**wrote** 23:18

**x**

**x** 4:1,12 16:2

**y**

**y** 32:5
**yeah** 9:13,25 10:2
  13:2 15:13 18:20
  19:4 20:24,24
  27:6 41:17 45:16
  49:13,24 50:13
  51:21
**year** 12:18 17:16
  49:17,24,24
**years** 22:19

**z**

**zink** 10:15 18:9,10
  19:15,18 36:7,11
  36:15,17 40:6
  43:15 48:17,22

Page 10

California Code of Civil Procedure

Article 5. Transcript or Recording

Section 2025.520

(a) If the deposition testimony is
stenographically recorded, the deposition officer
shall send written notice to the deponent and to
all parties attending the deposition when the
Original transcript of the testimony for each
session of the deposition is available for reading,
correcting, and signing, unless the deponent and
the attending parties agree on the record that the
reading, correcting, and signing of the transcript
of the testimony will be waived or that the
reading, correcting, and signing of a transcript of
the testimony will take place after the entire
deposition has been concluded or at some other
specific time.

(b) For 30 days following each notice under
subdivision (a), unless the attending parties and
the deponent agree on the record or otherwise in
writing to a longer or shorter time period, the
deponent may change the form or the substance of
the answer to a question, and may either approve
the transcript of the deposition by signing it, or

refuse to approve the transcript by not signing it.

(c) Alternatively, within this same period, the deponent may change the form or the substance of the answer to any question and may approve or refuse to approve the transcript by means of a letter to the deposition officer signed by the deponent which is mailed by certified or registered mail with return receipt requested. A copy of that letter shall be sent by first-class mail to all parties attending the deposition.

(d) For good cause shown, the court may shorten the 30-day period for making changes, approving, or refusing to approve the transcript.

(e) The deposition officer shall indicate on the original of the transcript, if the deponent has not already done so at the office of the deposition officer, any action taken by the deponent and indicate on the original of the transcript, the deponent's approval of, or failure or refusal to approve, the transcript. The deposition officer shall also notify in writing the parties attending the deposition of any changes which the deponent timely made in person.

(f) If the deponent fails or refuses to approve the transcript within the allotted period, the

deposition shall be given the same effect as though it had been approved, subject to any changes timely made by the deponent.

(g) Notwithstanding subdivision (f), on a seasonable motion to suppress the deposition, accompanied by a meet and confer declaration under Section 2016.040, the court may determine that the reasons given for the failure or refusal to approve the transcript require rejection of the deposition in whole or in part.

(h) The court shall impose a monetary sanction under Chapter 7 (commencing with Section 2023.010) against any party, person, or attorney who unsuccessfully makes or opposes a motion to suppress a deposition under this section, unless the court finds that the one subject to the sanction acted with substantial justification or that other circumstances make the imposition of the sanction unjust.

DISCLAIMER: THE FOREGOING CIVIL PROCEDURE RULES ARE PROVIDED FOR INFORMATIONAL PURPOSES ONLY. THE ABOVE RULES ARE CURRENT AS OF SEPTEMBER 1, 2016. PLEASE REFER TO THE APPLICABLE STATE RULES OF CIVIL PROCEDURE FOR UP-TO-DATE INFORMATION.

VERITEXT LEGAL SOLUTIONS
COMPANY CERTIFICATE AND DISCLOSURE STATEMENT

Veritext Legal Solutions represents that the
foregoing transcript is a true, correct and complete
transcript of the colloquies, questions and answers
as submitted by the court reporter. Veritext Legal
Solutions further represents that the attached
exhibits, if any, are true, correct and complete
documents as submitted by the court reporter and/or
attorneys in relation to this deposition and that
the documents were processed in accordance with
our litigation support and production standards.

Veritext Legal Solutions is committed to maintaining
the confidentiality of client and witness information,
in accordance with the regulations promulgated under
the Health Insurance Portability and Accountability
Act (HIPAA), as amended with respect to protected
health information and the Gramm-Leach-Bliley Act, as
amended, with respect to Personally Identifiable
Information (PII). Physical transcripts and exhibits
are managed under strict facility and personnel access
controls. Electronic files of documents are stored
in encrypted form and are transmitted in an encrypted
fashion to authenticated parties who are permitted to
access the material. Our data is hosted in a Tier 4
SSAE 16 certified facility.

Veritext Legal Solutions complies with all federal and
State regulations with respect to the provision of
court reporting services, and maintains its neutrality
and independence regardless of relationship or the
financial outcome of any litigation. Veritext requires
adherence to the foregoing professional and ethical
standards from all of its subcontractors in their
independent contractor agreements.

Inquiries about Veritext Legal Solutions'
confidentiality and security policies and practices
should be directed to Veritext's Client Services
Associates indicated on the cover of this document or
at www.veritext.com.

Case Name: Owens V. Clark

Case Number: 2:15-CV-00982-TLN-KJN

Court: U.S. Dist. Eastern of California
Sacramento division

# PROOF OF SERVICE BY MAIL

I, _Darrell_ declare:

That I am over the age of eighteen years of age and am not a party to the above entitled cause of action. That I reside in Solano County, California at the California Medical Facility, at 1600 California Drive, P.O. Box 2500, Vacaville, California, 95696-2500.

That on 12/11/17 I served the attached: a true copy of the attached:

Plaintiffs Opposition to defendants Summary Judgment/ Pages 1 - 32/ Plaintiffs disputed facts of defendants Summary Judgment/ Plaintiffs Conerise statement of disputed facts/ Plaintiffs response to defendants statement of Undisputed fact in Support of Plaintiffs' Opposition/ Notice of Lodging of deposition Transcript in support of Opposition to defendants Summary Judgment/ Declaration of Derrick Owens in Support of Opposition

by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, in the internal legal mail collection system at the California Medical Facility, Vacaville, California, addressed as follows:

United States district Court
Eastern district of California
501, I street, Suite 4-200
Sacramento. Calif. 95814-2322

Deputy Attorney General
Oliver R. Lewis
1300. I street, Suite 125
P.O. BOX 944255
Sacramento, Calif. 94244-2550

I declare under penalty of perjury and under the laws of the State of California that the foregoing is true and correct. That this proof of service was executed on 12/11/17 at the California Medical Facility, Vacaville, California.

_____
**Declarant**

_____
**Declarant's Signature**

# : Table of Contents :

1. Plaintiffs Opposition to defendants Summary Judgment . PAges, 1-32

2. Memorandum Points and Authorities / Preamble Statement of Case And Introduction, At, Page, 3-32

3. Opposing Summary Judgment Standard, At. Page, 9-32

4. Construing Plaintiffs Pro Se Pleadings Liberally, At, Page, 12-32

5. defendant Francis Ko Violated the United States Constitutions Eighth Amendment, At Page, 14-32

6. Plaintiff Statement of Undisputed Facts, At Page 16-32

7. defendants are not entitled to Qualified immunity in this Case, At. Page, 25-32.

8. Exhibit, One, "7362 Medical form" with Attached Affidavit of Custodian of Medical records. "Attach to Plaintiffs Opposition To defendants" Summary Judgment."

9. Plaintiffs disputed fact of defendants Summary Judgment, Memorandum of Points and Authorities; sworn declaration and Affidavit

10. Plaintiffs Concise Statement of disputed facts

11. Plaintiffs response to defendants Statement of Undisputed fact in Support of Plaintiffs Opposition to defendants Summary Judgment

12. Notice of Lodging of Deposition transcript in Support of opposition to defendants summary Judgment

13. Declaration of Derick Ravens in Support of Opposition to defendants Summary Judgment